659 A.2d 1278

Istvan **OSZTREICHER**

v.

Juan M. **JUANTEGUY.**

No. 77, Sept. Term, 1994.

Court of Appeals of Maryland.

June 19, 1995.

Reconsideration Denied July 17, 1995.

Marvin Ellin (Jack D. Lebowitz, Michael P. Smith, Ellin & Baker, all on brief), Baltimore, for appellant.

E. Dale Adkins, III (E. Scott Conover, Anderson, Coe & King, all on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL, and RAKER, JJ.

BELL, Judge.

We granted certiorari in this case to consider whether a medical expert witness may be required to produce his or her tax and financial records for use by the opposing party for impeachment purposes. Regrettably, the response of the party calling the expert medical witness to adverse rulings by the trial court prevents our reaching this most interesting issue. We shall hold, instead, that the election of Istvan Osztreicher, the appellant and plaintiff below, to refrain from presenting a case was an acquiescence in, or consent to, the adverse judgment subsequently entered against him. Accordingly, we shall dismiss the appellant's appeal.

This is a medical malpractice action arising out of alleged negligently performed vascular surgery, which resulted in permanent and irreversible ischemic spinal cord and neurological injury, including a permanent loss of bowel and bladder control. As required by Maryland Code (1974, 1995 Repl. Vol.), § 3–2A–04 of the Courts and Judicial Proceedings Article, it was filed initially in the Health Claims Arbitration Office.[1] The appellant named as defendants, Juan M. Juante-

---

1. Section 3–2A–04(a) provides in pertinent part:

(1) A person having a claim against a health care provider for damages due to a medical injury shall file his claim with the Director [of the Health Claims Arbitration Office], and, if the claim is against a physician, the Director shall forward copies of the claim to the State Board of Physician Quality Assurance and the Medical and Chirurgical Faculty of the State of Maryland.... The health care provider shall file a response with the Director and serve a copy on the claimant and all other health care providers named therein within the

guy, M.D., the appellee, Ramon Vasquez, M.D., and Sinai Hospital of Baltimore.[2] While the matter was pending in Health Claims Arbitration, pursuant to § 3-2A-04, the appellant named three expert medical witnesses, including Dr. Stewart Battle, whose withdrawal as a witness is at the heart of this case. Prior to Dr. Battle's deposition being taken, however, the appellant informed the appellee that the appellant "[did] not intend to call Dr. Battle forward at the Health Claims Arbitration hearing." Thereafter, the parties agreed pursuant to § 3-2A-06A, to waive health claims arbitration, whereupon, the case was filed in the Circuit Court for Baltimore City.[3]

The appellant did not thereafter provide the appellee with any additional designation of experts, although there was correspondence from the appellee to the appellant on the subject. Appellant's letter to the appellee asking the appellee to provide two dates if he intended to depose Dr. Battle prompted a motion by the appellee to exclude Dr. Battle's testimony. The circuit court denied that motion. Dr. Battle thereafter was deposed by the appellee three days prior to trial. During the deposition, he was asked the amount of income he derived from forensic activity, to which he gave an approximate figure. Appellant interposed no objection to that line of inquiry. Two days later, one day before trial, the appellee served Dr. Battle with a trial subpoena, commanding him to produce:

---

time provided in the Maryland Rules for filing a responsive pleading to a complaint. The claim and the response may include a statement that the matter in controversy falls within one or more particular recognized specialties.

2. In an amended statement of claim, the appellant named only the appellee and Sinai Hospital, thus dismissing any claim against Vasquez. Later, while the case was pending in the circuit court, the appellant dismissed, with prejudice, Sinai Hospital as a defendant.

3. Section 3-2A-06A(a) provides:
(a) In general.—At anytime before the hearing of a claim with the Health Claims Arbitration Office, the parties may agree mutually to waive arbitration of the claim, and the provisions of this subsection then shall govern all further proceedings on the claim.

[a]ny and all written documents, records, notes, correspondence, tax forms, and/or 1099 forms containing, referring to or reflecting income or monies received in the last two years for medical/legal and/or forensic activities, including but not limited to the review of medical records on behalf of a patient or health care provider or appearance at deposition, arbitration and/or trial on behalf of a patient and/or health care provider.

The appellant immediately filed a motion to quash the trial subpoena.

After a jury had been empaneled and opening statements made, the trial court considered the appellant's motion to quash. After hearing argument, the court denied the motion. It ruled:

I'm going to order, Dr. Battle, that you produce the income tax returns and the 1099 forms, or what of your other supporting documentation there is, to verify the income received from forensic activities.

I will propose to review that in camera. I don't know whether it's the anticipation by the defense that they would want to introduce these documents, but it seems to me that certainly Mr. Ellin is correct that defense can inquire about those areas, but without seeing the backup and support documentation, I think the cross-examination would become somewhat without course and without verification.

So I'm going to order, Mr. Ellin, that Dr. Battle produce the documents requested. I will review those.

Objecting most strenuously to the court's ruling, the appellant moved for a mistrial, asserting, "effectively—effectively—I'm not able to put on this case and that's tantamount because Dr. Battle has told [me] this morning if his and his wife's privacy are infringed upon, he will not testify in this case." He concluded that, "unless you grant a mistrial, ... you'll be granting a summary judgment for failure of going forward. Without Dr. Battle, I cannot present this case." The mistrial motion was denied, the court concluding "not [to] grant a mistrial in this situation because your witness does not wish to

disclose and you do not wish to proceed, asking him to testify."[4]

The appellant elected not to present any evidence. He explained:

I don't have a case to present. My case has been decimated by the witness' refusal under the terms that the Court has set to go forward as a matter of personal principle of the witness and his view that his rights are violated.

He also stated:

It would be folly of the highest degree for me to believe that I have any chance of properly representing the plaintiff with one witness who is retired from surgery at the present time.

I have to deal with the reality of some 30 years' experience in trial, most of it in medical malpractice, to know that I'm not going to help my client. I'm going to spend a lot of time and money for naught.

There is no way in this world I can go forward with one expert in this case and he, that one expert, retired from active surgical practice.

So your Honor will simply have to, as I'm sure you will anyway, take whatever or make whatever ruling you want and this is going to be—and I suppose it was inevitable that the Court of Appeals would have to deal with this issue sooner or later.

Since the appellant rested his case without presenting any evidence in support of his case, the trial court granted the appellee's motion for judgment.

---

**4.** After the court had indicated that it would not grant a mistrial, the appellant appeared to be willing to abide by the court's discovery ruling, going so far as to indicate a willingness to make phone calls to locate the information and have it faxed to the court. When the court recessed for that purpose, apparently the expert witness discussed the matter with the appellant's counsel and determined not to disclose and, thus, not to testify. Dr. Battle proffered his reasons for that decision to the court, which prompted another discussion of the propriety of a grant of a mistrial. Ultimately, the court reiterated its prior ruling.

The appellant noted an appeal to the Court of Special Appeals. We issued a writ of certiorari on our own motion, prior to that court's consideration of the case.

■■■ It is well settled in Maryland that "[t]he right to appeal may be lost by acquiescence in, or recognition of, the validity of the decision below from which the appeal is taken or by otherwise taking a position which is inconsistent with the right of appeal." *Rocks v. Brosius,* 241 Md. 612, 630, 217 A.2d 531, 541 (1966). *See Franzen v. Dubinok,* 290 Md. 65, 68, 427 A.2d 1002, 1004 (1981); *Bowers v. Soper,* 148 Md. 695, 697–98, 130 A. 330, 330–31 (1925); *Stewart v. McCaddin,* 107 Md. 314, 318–19, 68 A. 571, 573 (1908). Applying this principle, it has been held that a litigant "cannot, knowing the facts, both voluntarily accept the benefits of a judgment or decree and then later be heard to question its validity on appeal." *Suburban Development Corp. v. Perryman,* 281 Md. 168, 171, 377 A.2d 1164, 1165 (1977). *See Kneas v. Hecht Company,* 257 Md. 121, 123–24, 262 A.2d 518, 520 (1970); *Dubin v. Mobile Land Corp.,* 250 Md. 349, 353, 243 A.2d 585, 587 (1968); *State, Use of Shipley v. Walker,* 230 Md. 133, 137–38, 186 A.2d 472, 474 (1962); *Turner v. Washington Suburban Sanitary Commission,* 221 Md. 494, 505, 158 A.2d 125, 131 (1960); *Armour Fertilizer Works v. Brown,* 185 Md. 273, 278–280, 44 A.2d 753, 755–56 (1945). This rule has also been applied to consent judgments. *See Globe American Casualty Company v. Chung,* 322 Md. 713, 716–17, 589 A.2d 956, 957 (1991); *Banegura v. Taylor,* 312 Md. 609, 615, 541 A.2d 969, 972 (1988); *Long v. Runyeon,* 285 Md. 425, 429–30, 403 A.2d 785, 788 (1979); *Mercantile Trust Company v. Schloss,* 165 Md. 18, 24, 166 A. 599, 601 (1933); *Emersonian Apartments v. Taylor,* 132 Md. 209, 213–14, 103 A. 423, 424 (1918). Acquiescence implies consent, although by no means express consent. *See* Black's Law Dictionary 22 (5th ed. 1979) (defining "acquiesce" as "[t]o give an implied consent to a transaction, to the accrual of a right, or to any act, by one's mere silence, or without express assent or acknowledgement"); *Banegura v. Taylor, supra,* 312 Md. at 615, 541 A.2d at 972; *Lohss and Sprenkle v. State,* 272 Md. 113, 118–19, 321 A.2d 534, 538 (1974); *R.E.C.*

*Management Corp. v. Bakst Service, Inc.,* 265 Md. 238, 251, 289 A.2d 285, 291 (1972); *Rocks v. Brosius, supra,* 241 Md. at 630, 217 A.2d at 541. It has been held that a litigant who acquiesces in a ruling is completely deprived of the right to complain about that ruling. *Blaxton v. Clemens,* 202 Ga.App. 668, 415 S.E.2d 304, 306 (1992). A party who does not offer evidence on an issue as to which that party has the burden of proof acquiesces in the adverse judgment entered on that issue. *Bell v. Bell,* 248-S.W.2d 978, 992 (Tx.Ct.App.1952). *See Considine v. Considine,* 726 S.W.2d 253, 254 (Tex.Ct.App. 1987); *see also Hense v. G.D. Searle & Co.,* 452 N.W.2d 440, 444–45 (Iowa 1990) (a party inviting a final judgment waives right to appeal); *Frankfurt v. Bunn,* 408 P.2d 785, 787–88 (Okla.1965) (failure to controvert or contradict evidence is acquiescence in that evidence).

█ The trial court's denial of the appellant's motion to quash, coupled with the appellant's preferred expert withdrawing from the case, left the appellant with but one expert, a retired surgeon, upon whom to rely to prove the appellant's medical malpractice. Nevertheless, neither that ruling nor the court's subsequent denial of the appellant's motion for mistrial prevented the appellant from presenting a credible, even if not a strong, case; although the strength of appellant's case may have been affected, perhaps significantly, by the inability to use his preferred expert, rather than his ability to present a case, it was the appellant's perceived inability *successfully* to present a case that prompted him to elect not to go forward. The issue is not, however, whether the case successfully could have been presented, but whether the court's ruling left the appellant with *no* case to present. The effect of the appellant's not presenting a case was that a final judgment was entered against him, thus, clearing the way for him to challenge the trial court's adverse rulings on appeal. Indeed, that was his purpose. By so doing, however, he acquiesced in, if not consented to, the entry of that judgment. Under our cases, as we have seen, he may not now appeal and obtain review of those rulings.

**536**

We shall dismiss the appellant's appeal.

*APPEAL DISMISSED.*

*COSTS TO BE PAID BY THE APPELLANT.*