701 A.2d 1144

**Andrea Lynn DIETZ**

v.

**William Albert DIETZ, Jr.**

**No. 1560, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Sept. 2, 1997.

Reconsideration Denied Oct. 29, 1997.

---

Frances C. Gambo, Lutherville, for Appellant.

Thomas L. Hennessey, Towson, for Appellee.

Argued before CATHELL and SONNER, JJ., and PATRICK L. WOODWARD, Judge, Specially Assigned.

PATRICK L. WOODWARD, Judge, Specially Assigned.

Andrea L. Dietz appeals from the Judgment of Absolute Divorce entered by the Circuit Court for Baltimore County on April 1, 1996, which judgment provides, *inter alia*, that Ms. Dietz is granted a monetary award in the amount of $245,000, payable $20,000 within 5 days and the balance in monthly installments of $1,250.00 for 15 years. Ms. Dietz raises two questions for our consideration. First, she claims that the trial court erred in the application of the three-step procedure for determining whether to grant a monetary award by failing to determine whether Mr. Dietz's interest in certain real property was marital property and by failing to ascribe a value to that interest if found to be marital property. Secondly, Ms. Dietz asserts that the trial court abused its discretion by ordering the payment of the monetary award in monthly installments over a 15–year period. Unfortunately for Ms. Dietz, we do not reach these questions, because we have concluded that the appeal in this case must be dismissed.

## *FACTUAL BACKGROUND*

Andrea L. Dietz and William A. Dietz were married on January 8, 1977. Two children were born of the marriage of the parties, namely, Kevin Michael Dietz, born September 21, 1980, and Jillian Nicole Dietz, born July 26, 1982. At the time of the marriage, William Dietz was working for his father, Fred E. Dietz, Sr., and with his brother, Fred, Jr., in the family farming and dairy operation. For the first two years of their marriage, the parties lived in a farmhouse on a 700 acre farm that was leased by the family farm operation.

In 1978, Fred Dietz, Sr. entered into a contract for the purchase of a 289 acre farm known as the Lang Valley Farm. At the time of settlement on February 1, 1979, the deed that was executed by the seller conveyed the Lang Valley Farm to Fred Dietz, Sr., Fred Dietz, Jr., and William Dietz, as joint tenants. Fred Dietz, Sr. paid a portion of the purchase price at settlement, and a mortgage for the balance was executed by Fred Dietz, Sr., Fred Dietz, Jr., and William Dietz. When the

Lang Valley Farm was purchased, the parties and their children moved to this farm and resided there until 1990.

From 1979 to 1984, all payments on the mortgage were made by Fred Dietz, Sr. out of the proceeds of the family farm operation. In 1984, Fred Dietz, Sr. decided to retire and transferred all of the farm operation assets to his sons, Fred Dietz, Jr. and William Dietz. Fred Dietz, Jr. and William Dietz then formed a partnership known as "Dietz Brothers Partnership," each owning a one-half (1/2) interest therein. From and after 1984, the Dietz Brothers Partnership continued the family farm operation and paid off the balance of the Lang Valley Farm mortgage.

In December of 1990, Andrea Dietz, William Dietz, and their children moved from the Lang Valley Farm to a single family dwelling that the parties had purchased in Baldwin, Maryland. Except for several trial separations, the parties resided there until September 1, 1992, when Mr. Dietz finally moved out and returned to live on the Lang Valley Farm. Ms. Dietz remained in the house until shortly before it was sold on December 7, 1993. As of February 1995, Ms. Dietz was employed full time at Artography Labs, Inc. as a customer service representative with an income of $23,000 per year.

### PROCEDURAL HISTORY

On October 27, 1992, Andrea Dietz instituted this action by filing a Complaint for Limited Divorce and Other Relief in the Circuit Court for Baltimore County. In her Complaint, Ms. Dietz sought, *inter alia,* an award of temporary and permanent alimony, custody of both minor children, and child support. From October 27, 1992 to February 2, 1995, several hearings were held in the circuit court on the issues of alimony, support, visitation, custody, and expenses for experts. The results of these proceedings were that (1) temporary alimony was denied by the Domestic Relations Master and no exceptions were filed by Ms. Dietz, (2) the parties were awarded joint legal custody of the minor children, with the primary physical custody of Jillian granted to Ms. Dietz and

the primary physical custody of Kevin granted to Mr. Dietz, (3) Mr. Dietz was required to pay child support to Ms. Dietz of $296.48 per month, (4) a visitation schedule was established, and (5) Ms. Dietz's request for expenses for experts was denied.

When the case came to trial on February 28, 1995, before the Honorable Robert E. Cadigan, the only issues remaining for resolution were the determination of a monetary award, if appropriate, and Ms. Dietz's request for attorney's fees. Ms. Dietz advised the trial court that she was not requesting an award of alimony. The trial court took testimony and received evidence on 6 separate dates from February 1995 to February 1996, and issued an oral opinion on February 26, 1996.

In his opinion, Judge Cadigan stated that the three-step procedure mandated by Md.Code (1984, 1991 Repl.Vol., 1996 Supp.), §§ 8–203 to 8–205 of the Family Law Article ("F.L."), was followed for the determination of what property was marital property, the valuation of that property, and whether a monetary award was appropriate. Regarding Mr. Dietz's interest in the Lang Valley Farm, the trial court found that there was no legally sufficient evidence to determine the value of any marital interest in the Lang Valley Farm even if such marital interest existed. Therefore, Mr. Dietz's interest in the Lang Valley Farm was not considered in determining a monetary award. On the other hand, Judge Cadigan held that Mr. Dietz's entire interest in the Dietz Brothers Partnership was marital property. After considering the testimony from experts called by both parties, the trial court valued the partnership at $1,204,759, and Mr. Dietz's fifty percent interest therein at $602,380. Finally, Judge Cadigan considered each of the factors set forth in F.L. § 8–205(b) and concluded that a fair and equitable monetary award to Ms. Dietz was 40.7% of the marital property, or $245,169, rounded to $245,000. Judge Cadigan declared that a judgment for $245,000 would be entered against Mr. Dietz, and he would be required to pay to

Ms. Dietz $20,000 within 30 days of entry of judgment[1] and $1,250 per month for 15 years beginning May 1, 1996. Ms. Dietz's request for attorney's fees was denied. The Judgment of Absolute Divorce was filed on April 1, 1996, and this appeal followed on May 1, 1996.

By check dated April 23, 1996, Mr. Dietz tendered to Ms. Dietz the first installment of $20,000 on the monetary award. Ms. Dietz endorsed the check and deposited the same on or about April 26, 1996. When the first monthly installment of $1,250, due May 1, 1996, was not paid on time, Ms. Dietz filed a Petition for Contempt seeking to have Mr. Dietz held in contempt of court for failing to pay that installment. The circuit court issued a Show Cause Order and scheduled a hearing. About the time of the issuance of the Show Cause Order, however, Mr. Dietz paid the May installment, and the hearing was cancelled. Thereafter, Mr. Dietz paid each monthly installment until March of 1997. All of the monthly payments were accepted by Ms. Dietz.

On March 24, 1997, Mr. Dietz filed in this Court, as a part of his brief, a Motion to Dismiss Ms. Dietz's appeal on the ground that, because Ms. Dietz, knowing the facts, voluntarily accepted benefits accruing to her under the Judgment of Absolute Divorce, she has waived any errors in that judgment and is estopped from maintaining her appeal.

## DISCUSSION

It is a well established rule in Maryland that if a party, knowing the facts, voluntarily accepts the benefits accruing to him or her under a judgment, order, or decree, such acceptance operates as a waiver of any errors in the judgment, order, or decree and estops that party from maintaining an appeal therefrom. *Dubin v. Mobile Land Corp.*, 250 Md. 349, 353, 243 A.2d 585 (1968). This principle of law (hereinafter referred to as the "general waiver rule") has been applied by

---

1. The Judgment of Absolute Divorce in this case states that the initial payment of $20,000 shall be made "within five (5) days from the date of the execution of this Judgment."

this Court and the Court of Appeals in a variety of factual and legal settings.

In *Dubin*, the Court of Appeals held that when a decree enjoined a mortgagee from instituting any foreclosure proceedings for any default allegedly occurring prior to a certain date, but allowed the mortgagee such expenses as may have been incurred in instituting foreclosure proceedings, the acceptance by the mortgagee of the payment of such expenses in accordance with the trial court's decree precluded the mortgagee from challenging the decree on appeal. According to the Court, "[t]he knowledgeable acceptance . . . of the benefit of any portion of the decree waived any alleged error in the entire decree and estopped the accepting party from challenging the decree on appeal." *Id.* at 353, 243 A.2d 585; *see Suburban Development Corp. v. Perryman*, 281 Md. 168, 377 A.2d 1164 (1977) (purchaser at tax foreclosure sale forfeited his right to appellate review of the trial court's decree authorizing redemption of the subject properties when the purchaser accepted the payment of the costs and expenses awarded to him under that decree).

When a plaintiff agreed to the trial court's reduction of a jury's compensatory damage award, accepted full payment of the judgment entered on the reduced award, and had the judgment marked "Paid, Settled and Satisfied," the plaintiff forfeited his right to appellate review of the trial court's decision granting a judgment *n.o.v.* on the jury's punitive damage award. *Kneas v. Hecht Co.*, 257 Md. 121, 262 A.2d 518 (1970); *see State, Use of Shipley v. Walker*, 230 Md. 133, 186 A.2d 472 (1962) (plaintiff's acceptance of the lesser amount upon the trial court's order of remittitur is a bar to review); *Turner v. Washington Suburban Sanitary Commission*, 221 Md. 494, 158 A.2d 125 (1960) (plaintiff's acceptance of the trial court's order of remittitur precluded appellate review notwithstanding the plaintiff's reservation of the right to appeal the trial court's failure to enter judgment for the amount of the jury verdict); *Rispoli v. Jackson*, 51 Md.App. 606, 445 A.2d 349 (1982) (plaintiff's acceptance of payment from the defendant's insurer of the jury award on all negligence counts

barred an appeal on the negligent entrustment count when the negligence and negligent entrustment counts all involved the same accident, injuries, and principal).

The general waiver rule has been extended beyond the appellant's acceptance of benefits under a court's judgment, order, or decree to include the appellant's "acquiescence in, or recognition of, the validity of the decision below from which the appeal is taken or by otherwise taking a position which is inconsistent with the right of appeal." *Rocks v. Brosius,* 241 Md. 612, 630, 217 A.2d 531 (1966); *see Kicherer v. Kicherer,* 285 Md. 114, 400 A.2d 1097 (1979) (co-guardians of a "disabled person" waived their respective rights to appeal the trial court's decree appointing them as co-guardians, because each had accepted the decree by submitting his bond, thereby qualifying as, and becoming a guardian); *Bowers v. Soper,* 148 Md. 695, 130 A. 330 (1925) (appellant lost his right to appeal when he sought the distribution of funds in accordance with an audit and attempted to appeal from the order finally ratifying the auditor's report and account); *Stewart v. McCaddin,* 107 Md. 314, 68 A. 571 (1908) (mortgagee's appeal from the trial court's order enjoining the foreclosure of the mortgage was dismissed because in the foreclosure proceedings subsequently instituted by the mortgagee, the mortgagee relied on the very order from which he appealed as authority for his prosecution of the subsequent foreclosure proceedings). The general waiver rule also has been applied to prevent appeals from consent judgments or decrees. *Mercantile Trust Co. v. Schloss,* 165 Md. 18, 166 A. 599 (1933).

More recently, in *Osztreicher v. Juanteguy,* 338 Md. 528, 659 A.2d 1278 (1995), the Court of Appeals applied the general waiver rule to a case in which the plaintiff-appellant elected not to go forward with his case when the trial court's ruling effectively prevented the plaintiff from calling one of his expert witnesses. The Court of Appeals found that since the trial court's ruling did not leave the plaintiff without a case to present, the plaintiff's failure to present a case constituted acquiescence in, if not consent to, the entry of an adverse

judgment. As a consequence, the plaintiff could not appeal and obtain review of the trial court's ruling.[2] *Id.* at 535, 659 A.2d 1278. In sum, the essence of the general waiver rule, as stated by Judge Digges in *Franzen v. Dubinok,* 290 Md. 65, 427 A.2d 1002 (1981), is "that a voluntary act of a party which is inconsistent with the assignment of errors on appeal normally precludes that party from obtaining appellate review." [3] *Id.* at 69, 427 A.2d 1002.

As is the case with most principles of law, there are exceptions to the general waiver rule. In *Dubin v. Mobile Land Corp., supra,* the Court of Appeals recognized one exception, as follows:

> If, however, the portion of the decree adjudicates a separate and distinct claim which benefits the appellants, unrelated to, or independent of, the unfavorable portion of the decree, then the acceptance of the benefit under the unrelated or independent portion of the decree will not result in a waiver of the right to appeal from the other unfavorable independent portion of the decree. 250 Md. at 353, 243 A.2d 585 [citations omitted].

*See Rispoli,* 51 Md.App. at 611, 445 A.2d 349. In addition, the Court of Appeals has found that there is a significant difference between the receipt by a judgment creditor and the payment by a judgment debtor of an amount judicially determined to be due. *Franzen,* 290 Md. at 69, 427 A.2d 1002. Thus, a judgment debtor's payment of a judgment, unless tendered as a compromise or a settlement or under an agreement not to appeal, is an involuntary act, creating no bar to appellate review. *Id.* at 71, 427 A.2d 1002.

Another exception has been carved out of the general waiver rule in cases involving awards under the Workers'

---

**2.** The general waiver rule has been cited with approval in dicta in a recent case from this Court. *Patel v. HealthPlus, Inc.,* 112 Md.App. 251, 270 n. 15, 684 A.2d 904 (1996).

**3.** The general waiver rule has been accepted by courts in jurisdictions outside of Maryland. *See* 5 AM JUR 2d. *Appellate Review* § 628 (1995), and the cases cited therein.

Compensation Act. In *Bethlehem Steel Co. v. Mayo,* 168 Md. 410, 177 A. 910 (1935), it was held that the general waiver rule does not apply when the right to the benefits received is conceded by the opposite party and the language of the statute bars a stay of the payment of a compensation award because of an appeal. *Id.* at 414–15, 177 A. 910. The Court of Appeals reasoned that the purpose of the Act was " 'to insure speedy, as well as certain, relief in proper cases within the scope of its application. That humanitarian policy would be seriously hampered if the weekly payments of compensation awarded by the commission could be suspended because of an appeal.' " *Id.* at 414, 177 A. 910 (quoting *Branch v. Indemnity Ins. Co.,* 156 Md. 482, 489, 144 A. 696, 698 (1929)). In *Bethlehem Steel,* the employer conceded that the claimant was entitled to a 50% disability award granted by the Commission and made payments to the claimant in accordance with that award. The claimant accepted those payments, but appealed to the circuit court seeking an award for 100% disability. The Court of Appeals held that the claimant did not waive his right to appeal by accepting payments under the 50% conceded award. In a later case, however, the Court of Appeals found that a claimant's acceptance of benefits under a compensation award would preclude review under the general waiver rule if such review could result in a finding that the injury was not compensable. *Smith v. Revere Copper and Brass, Inc.,* 196 Md. 160, 76 A.2d 147 (1950). Finally, the Court of Appeals expanded this exception to the general waiver rule to include lump sum payments under a compensation award when the Commission converted the award into a lump sum. *Petillo v. Stein,* 184 Md. 644, 42 A.2d 675 (1945).

The final exception to the general waiver rule, and the one most relevant to the instant appeal, is found in the case of *Lewis v. Lewis,* 219 Md. 313, 149 A.2d 403 (1959). In *Lewis,* the trial court granted the wife a divorce *a mensa et thoro* on the ground of desertion and awarded her permanent alimony of $500 per month. Both parties appealed from this decree, the wife claiming that she should have received an alimony award of $1,000 per month. During the pendency of the

appeal, the husband tendered, and the wife accepted, the alimony payments ordered under the trial court's decree. The husband moved to dismiss the wife's appeal on the ground that the wife was barred by the general waiver rule from seeking a larger alimony award because she accepted the payments ordered by the trial court.

The Court of Appeals first declined to follow the divorce case of *Silverberg v. Silverberg,* 148 Md. 682, 130 A. 325 (1925), in which case the general waiver rule was held to bar the wife-appellant from seeking an enlargement of alimony and other relief not awarded by the trial court. *Silverberg* was distinguished by the Court of Appeals because the trial court's decree both set aside a deed from the husband to third parties as a fraud on the wife's marital rights and granted the wife benefits over and above an award of alimony. *Lewis,* 219 Md. at 316, 149 A.2d 403. The Court in *Lewis* then recognized the exception to the general waiver rule found in the above-cited Workers' Compensation Act cases and referred with approval to the statement in *Petillo v. Stein, supra,* that "the doctrine [general waiver rule] is a severe one and should not be extended." *Id.* at 317, 149 A.2d 403. In deciding to deny the husband's motion to dismiss the wife's appeal in *Lewis,* the Court of Appeals concluded:

> We hold that, if applicable at all in a divorce case, the bar cannot be raised where the benefits accruing to the wife, by reason of the award, provide necessary support until the final adjudication of the case.

*Id.* at 317, 149 A.2d 403.

## ANALYSIS

When the above principles of law are applied to the instant case, the question presented for decision is whether, in the application of the general waiver rule, a monetary award in a divorce case is similar to an award of alimony. If so, *Lewis* dictates that a voluntary acceptance of any benefits of a monetary award will not preclude appellate review thereof. If not, the general waiver rule enunciated in *Dubin* and other

cases will apply and, in the absence of any other available exception,[4] will require a dismissal of the appeal. This question is one of first impression in Maryland.

In *McAlear v. McAlear*, 298 Md. 320, 469 A.2d 1256 (1984), the Court of Appeals conducted an extensive review of the relationship of a monetary award to alimony in the context of deciding whether a monetary award is a form of alimony, and thus not a debt within the scope of the Maryland Constitution, Art. III, Section 38, thereby subjecting a party to imprisonment for failure to pay a monetary award. Writing for the Court, Judge Rita Davidson found from the history of the evolution of alimony and property disposition that the Court of Appeals consistently distinguished between alimony and disposition of property incident to a divorce. *Id.* at 327, 469 A.2d 1256 (citing *Bushman v. Bushman*, 157 Md. 166, 145 A. 488 (1929); *Emerson v. Emerson*, 120 Md. 584, 87 A. 1033 (1913); *Wallingsford v. Wallingsford*, 6 H. & J. 485 (1823)). This distinction was summarized in *Emerson* as follows: "[o]ne is a division of property, while the other is the maintenance of the wife out of the income of the husband." 120 Md. at 591, 87 A. 1033. In addition, Judge Davidson stated that the legislative histories of both the Property Disposition in Divorce and Annulment Act, F.L. §§ 8–201, *et seq.*, and the 1980 Alimony Act, F.L. §§ 11–101, *et seq.*, "overwhelmingly establish a legislative intent to restrict the scope of the Property Disposition Act to the disposition of property acquired before and during the marriage" and "to restrict the scope of the 1980 Alimony Act to alimony." *McAlear*, 298 Md. at 344 & 347, 469 A.2d 1256. Neither Act was intended "to alter Maryland's traditional distinction between alimony and disposition of

---

4. If the general waiver rule is found to apply to an appeal from a monetary award, but the appellee concedes that the appellant is entitled to all or part of the monetary award determined by the trial court, it could be argued that acceptance of no more than the conceded amount would not bar an appeal. *See Bethlehem Steel Co. v. Mayo, supra.* Since it is unclear from the record in this case or from oral argument before us whether the appellee made any concessions regarding the amount and the method of payment of the monetary award, we are not called upon to decide this issue.

property, or to authorize the award of 'alimony in gross.' " *Id.* at 347, 469 A.2d 1256.

The Court of Appeals in *McAlear*, however, recognized that there is an interrelationship between a monetary award granted under F.L. §§ 8–203 to 8–205, and an award of alimony pursuant to F.L. §§ 11–101 to 11–107. The Court described this interrelationship as follows:

A monetary award, particularly one required to be paid in installments, resembles an award of alimony that requires periodic payments for a definite period of time. Moreover, in determining the amount of either a monetary award or alimony, equity courts are required to consider similar factors, such as the value of all property interests of the spouses, the contributions—monetary and nonmonetary—of the spouses, the economic circumstances of the spouses at the time of the award, the facts and circumstances that contributed to the estrangement of the spouses, and the duration of the marriage. Additionally, in determining the amount of a monetary award, equity courts must consider any award of alimony, while in determining the amount of alimony, equity courts must consider any monetary award. Moreover, a monetary award may be reduced to a judgment only to the extent that any part of the award is due and owing. Finally, a monetary award may be granted when alimony is not granted.

*Id.* at 347–48, 469 A.2d 1256.

Notwithstanding the foregoing, the Court determined that "the interrelationship between a monetary award and an award of alimony does not transform a monetary award into a form of alimony or a substitute for alimony" and is insufficient "to establish that the General Assembly intended that a monetary award be a form of alimony or a substitute for alimony." *McAlear*, 298 Md. at 348, 469 A.2d 1256. Therefore, the Court reached the following conclusion:

Neither history nor precedent nor logic supports the wife's contention that a monetary award constitutes a form of alimony. Accordingly, we now hold that a monetary award

granted pursuant to § 3–6A–05 of the Courts and Judicial Proceedings Article [now F.L. §§ 8–203 to 205] constitutes a property disposition award that adjusts the marital property interests of the spouses. It does not constitute a form of alimony.

*Id.* at 351, 469 A.2d 1256.

The principles of law announced by the Court of Appeals in *McAlear* have been restated with approval by the Maryland appellate courts in several subsequent cases. *See Lohman v. Lohman,* 331 Md. 113, 626 A.2d 384 (1993); *Middleton v. Middleton,* 329 Md. 627, 620 A.2d 1363 (1993); *Riley v. Riley,* 82 Md.App. 400, 571 A.2d 1261 (1990). In *Riley,* we discussed the difference, in nature and function, between an alimony and monetary award. We stated the following:

Whether limited and rehabilitative in nature or indefinite in terms of duration, alimony is intended to provide periodic support to a financially dependent spouse following the divorce. Although, as in the case of a monetary award, present and past circumstances must be taken into account in deciding whether to award alimony, how much to award, and for what period of time to award it, the principal focus is really on the future: what will the needs of the spouse seeking the alimony be upon dissolution of the marriage; what other resources will that spouse have available to meet those needs; what resources will the other spouse have available from which to pay the needed support?

A monetary award, on the other hand, is not intended as support, and it focuses not on the future but on the present and past. The court looks at the property acquired prior to the divorce, especially that acquired during the marriage. The sole purpose of the award is to assure that the disposition of that property upon the divorce will be equitable in terms of the overall contributions that each party made to the acquisition of the property and to the marriage and its breakup. Although the court can direct that the award be paid over a period of time, its function is to provide a

**present** compensation for an **existing** inequity in the **current** ownership of property.

*Riley,* 82 Md.App. at 406, 571 A.2d 1261 (emphasis in original).

■ The distinction between a monetary award and alimony that is set forth in *McAlear* and its progeny is relevant to the rationale, both explicit and implicit, underlying the *Lewis* exception to the general waiver rule. In *Lewis,* the Court of Appeals held the general waiver rule to be inapplicable, because the benefits accruing to the appellant under trial court's award of alimony "**provide necessary support** until the final adjudication of the case." *Id.* at 317, 149 A.2d 403 (emphasis added).[5] This language indicates that, in the opinion of the Court of Appeals, the application of the general waiver rule would place an unreasonable burden on a litigant when such litigant would have to forego the "necessary support" provided by an alimony award in order to prosecute an appeal therefrom. It also can be inferred from the Court's language that the application of the general waiver rule to an alimony award would have a chilling effect on the prosecution of legitimate appeals, because a financially dependent spouse simply would not risk economic disaster by deferring receipt of the alimony awarded by the trial court in order to seek a larger sum through an appeal. In sum, the rationale supporting the *Lewis* exception is the unreasonable burden placed on the appellant by the application of the general waiver rule, because that rule would cause the loss, or potential loss, of necessary support to the appellant during the pendency of the appeal.

■ "A monetary award, on the other hand, is **not intended as support** ... The **sole purpose** of the award is to assure that the disposition of [marital] property upon the divorce will be equitable...." *Riley,* 82 Md.App. at 406, 571 A.2d 1261

---

5. This concept of the judgment or decree "providing necessary support" to the appellant is also present in the Workers' Compensation cases that were cited with approval in *Lewis. See Bethlehem Steel Co. v. Mayo,* 168 Md. at 414, 177 A. 910; *Branch v. Indemnity Ins. Co.,* 156 Md. at 489, 144 A. 696.

(emphasis added). Although there is a statutory interrelationship between a monetary award and an award of alimony, such interrelationship "does not transform a monetary award into a form of alimony or a substitute for alimony." *McAlear*, 298 Md. at 348, 469 A.2d 1256. Thus a monetary award, by definition, cannot provide for the "support" of the recipient of such award.[6]

## *CONCLUSION*

We conclude that, in the application of the general waiver rule, a monetary award cannot be considered similar to alimony in nature, function, or purpose. The nature of a monetary award is the disposition of property, while the nature of alimony is the maintenance of a financially dependent spouse. The function of a monetary award is to provide present compensation for an existing inequity in the current ownership of marital property, while the function of alimony is to provide periodic support to the financially dependent spouse for a definite or indefinite time period. Finally, the overall purpose of a monetary award is the equitable disposition of marital property, while the purpose of alimony is to provide the financially dependent spouse with the economic means to become self-supporting or to meet the needs of that spouse if self-sufficiency is unlikely or if there is an unconscionably disparate standard of living between the parties. In addition, the rationale underlying the *Lewis* exception to the general waiver rule is the unreasonable burden placed on the appellant by the loss, or potential loss, of necessary support during the pendency of the appeal. Since a monetary award is not intended as support, no such unreasonable burden is placed on the appellant by the application of the general waiver rule. Accordingly, we hold that if a party, knowing the facts,

---

6. The same conclusion was reached by the Bankruptcy Court in Florida in the context of whether a marital award is dischargeable under the federal bankruptcy laws. *See In re Hall*, 40 B.R. 204, 206 (Bankr. M.D.Fla.1984). The Bankruptcy Court in Maryland, however, reached the opposite result in the case of *Coffman v. Coffman*, 52 B.R. 667, 674 (Bankr.D.Md.1985).

voluntarily accepts any of the benefits of a monetary award under a judgment of absolute divorce, such acceptance constitutes a waiver of any errors in that judgment and bars that party from maintaining an appeal therefrom. *See Kneas,* 257 Md. at 123–25, 262 A.2d 518; *Dubin,* 250 Md. at 353, 243 A.2d 585; *Turner,* 221 Md. at 505, 158 A.2d 125; *Rispoli,* 51 Md.App. at 610–12, 445 A.2d 349.[7]

In the instant case, Ms. Dietz elected at trial not to seek an award of alimony. The only major issue remaining for determination by the trial court was whether a monetary award should be granted to Ms. Dietz. In his opinion, Judge Cadigan determined that Mr. Deitz's interest in the Deitz Brothers Partnership was marital property. He valued the martial interest at $602,380. After considering all of the factors required by F.L. § 8–205(b), Judge Cadigan concluded that a fair and equitable award to Ms. Dietz was 40.7%, or $245,000. He then ordered that this amount be paid by an immediate payment of $20,000 and, thereafter, in installments of $1,250 per month for 15 years. It is undisputed that Ms. Dietz accepted the initial payment of $20,000 plus 11 months of installment payments, for a total $33,750. Ms. Dietz also filed a Petition for Contempt against Mr. Dietz when the May 1996 installment was not paid on time. A Show Cause Order was issued by the circuit court and a hearing scheduled. Therefore, it is clear that Ms. Dietz knowingly and voluntarily accepted benefits of the monetary award ordered by the Judgment of Absolute Divorce in the instant case. Under the general waiver rule, such acceptance operates as a waiver of any errors in the judgment and precludes the maintenance of this appeal.

---

7. Courts outside of Maryland have applied, for the most part, the general waiver rule to cases involving an appellant's acceptance of benefits under the property settlement provisions of a divorce decree. *See* E.T. Tsai, Annotation, *Spouse's Acceptance of Payments under Alimony or Property Settlement or Child Support Provisions of Divorce Judgment as Precluding Appeal Therefrom,* 29 A.L.R.3d 1184 (1970, 1996 Supp.).

For the foregoing reasons, we shall grant the appellee's Motion to Dismiss.

**APPEAL DISMISSED; COSTS TO BE PAID BY APPELLANT.**