739 A.2d 914

E. Mitchell FRY, Jr.

v.

COYOTE PORTFOLIO, LLC, Successor In Interest.

No. 5371, Sept. Term, 1998.

Court of Special Appeals of Maryland.

Oct. 28, 1999.

608

**610**

Michael Myerson, Ellicott City (Marc E. Shach, David H. Cole and Coon & Shach, LLC, on the brief), Baltimore, for appellant.

Ralph S. Tyler (Hogan & Hartson, L.L.P., on the brief), Baltimore, for appellee.

Argued before DAVIS, EYLER and JOHN J. BISHOP, Jr. (retired, specially assigned), JJ.

DAVIS, Judge.

On November 1, 1985, appellant E. Mitchell Fry executed a Promissory Note (Note) to pay $1,500,000 to The State of Maryland Deposit Insurance Fund Corporation (MDIF). Appellant defaulted on the Note leaving a balance due of $500,-000. In November 1995, MDIF filed suit in the Circuit Court for Baltimore City against appellant to procure payment. In December 1995, MDIF and appellant reached an agreement on a payment schedule for the balance due under the Note. MDIF filed a Motion for Approval of Settlement Agreement, and the trial court (Kaplan, J.) approved the order.

On August 12, 1998, appellee Coyote Portfolio LLC purchased all of MDIF's rights, title, and interest in the MDIF-appellant Settlement Agreement. On November 18, 1998, appellee sent appellant a ten-day notice to cure payments that were past due for the months of June and November 1998. Soon thereafter, appellee filed a petition for the entry of consent judgments in the Circuit Court for Baltimore City. In response, appellant filed an Opposition to Petition for the Entry of Consent Judgments, stating that appellee had no legal right to file the consent judgments. Appellee filed a Reply Memorandum in Support of Petition to Enter Consent Judgments. Appellant filed a further response to Reply Memorandum in Support of Petition to Enter Consent Judgments.

On December 22, 1998, the lower court ordered two consent judgments for $100,000 and two consent judgments for $50,000 against appellant. Appellant filed a motion to alter or amend consent judgments. Appellee filed a response to appellant's motion to alter or amend consent judgments. The circuit court denied appellant's motion to alter or amend consent judgments, and appellant timely noted this appeal. Appellant presents for our review three questions that we restate as follows:

I. Did the circuit court err when it entered the consent judgments?

II. Did the circuit court err when it failed to treat the consent judgments as confessed judgments thereby violating appellant's procedural due process rights?

III. Did the circuit court abuse its discretion in denying appellant's motion to alter or amend judgments?

Appellee has filed a motion to dismiss this appeal, contending that, when, as in this case, a party receives the benefits of the negotiated agreement to consent to entry of judgment, he or she waives any errors in the judgment and an appeal from the judgment will not thereafter lie. We agree with the position espoused by appellee and, consequently, dismiss this appeal.

## FACTUAL BACKGROUND

Appellant was the owner and a board member of the Friendship Savings and Loan Association. On October 21, 1985, appellant and appellee's predecessor-in-interest, MDIF, entered into an agreement wherein Friendship Savings and Loan Association paid one million dollars to MDIF. Pursuant to this agreement, appellant signed a promissory note agreeing to pay MDIF an additional 1.5 million dollars over ten years. Appellant paid one million dollars, but disputed the remaining payment of $500,000 on the Note to MDIF. On January 22, 1996, MDIF filed a lawsuit against appellant in the Circuit Court for Baltimore County to collect the remaining balance due on the Note. On March 3, 1997, appellant and

MDIF reached a Settlement Agreement (1997 Settlement Agreement) providing for a payment schedule for the $500,000 still owing from the original 1985 Agreement.

Pursuant to the 1997 Settlement Agreement, appellant agreed to make a series of payments, without interest, starting in March 1997 and concluding in June 1999. The terms of the 1997 Settlement Agreement required appellant to consent to seven judgments in the respective amounts of $50,000, $50,000, $100,000, $50,000, $50,000, and $100,000 in the event that appellant defaulted on any of his payments. As payments were made in accordance with the new schedule, counsel for MDIF would return to counsel for appellant the corresponding consent judgment. Appellant and MDIF both obtained legal advice from their respective attorneys in connection with the 1997 Settlement Agreement prior to signing. On March 7, 1997, the lower court approved the 1997 Settlement Agreement.

On August 12, 1998, appellee purchased all of MDIF's rights, title, and interest in the 1997 Settlement Agreement. On November 18, 1998, appellee's counsel sent appellant a ten-day notice to cure since he was then in default on the June 1, 1998 $100,000 payment and the November 1, 1998 $50,000 payment. The notice advised appellant that all of the remaining consent judgments will be entered against him unless he cured within ten days. Because appellant failed to cure, appellee, as successor-in-interest to MDIF, filed a Petition For the Entry of Consent Judgments in the Circuit Court for Baltimore City. Appellant, in response, filed an opposition to the petition, claiming that appellee, as MDIF's successor-in-interest, had no standing to file the petition seeking entry of the 1997 Settlement Agreement consent judgments. Soon thereafter, appellee filed a reply and an affidavit, confirming that it had purchased all of MDIF's rights and interest in the 1997 Settlement Agreement. Subsequently, appellant filed an additional response to appellee's reply.

On December 22, 1998, the lower court entered two consent judgments for $100,000 and two consent judgments for $50,-

000. Appellant then filed a motion to alter or amend the consent judgments. On January 11, 1999, the court denied appellant's motion to alter or amend the consent judgments. Appellant timely noted this appeal.

## DISCUSSION

Anticipating appellee's motion to dismiss, appellant initially concedes, "Because under Maryland law, consent judgments are intended to reflect a mutually negotiated agreement to settle a dispute, there is normally no right to appeal based on the merits of a consent judgment." He characterizes a consent judgment as "an enforcement mechanism to be wielded by the creditor, MDIF, if and when it decides, unilaterally and in its sole discretion, that the debtor, [appellant], is late in making payment." He ultimately submits that "[t]he traditional judicial acquiescence towards consent judgments is inappropriate in this case."

In an effort to overcome established legal precedent that an appeal will not lie from entry of a consent judgment reflecting a negotiated settlement and, in an attempt to persuade us to reach the merits of his substantive arguments, appellant contends:

1. There was lack of consent to the entry of the consent judgments because appellant had withdrawn his consent prior to the entry of the consent judgments and MDIF had, at the time of entry of the consent judgments, assigned its rights to appellee;

2. A consent judgment can only be filed by the filing parties and cannot be assigned prior to filing;

3. Consent judgments "should be treated as confessions of judgment" because they were not the simultaneous product of negotiations and, as employed here, are a unilateral enforcement mechanism and deny appellant the "opportunity to prove that there were substantial and real grounds for an actual controversy as to the merits of the defense";

4. Enforcement of consent judgments pursuant to Maryland Rule 2–612 (1999), which does not provide for notice or an opportunity to be heard, violates due process guarantees of both the United States and Maryland Constitutions;

5. The language of the Settlement Agreement did not indicate a knowing waiver of procedural due process rights and the unequal bargaining power between MDIF and appellant precluded a finding that any waiver was voluntary;

6. The consent judgments should be vacated because counsel for appellant "did not receive a copy of the order until almost three months after the judgments were recorded."

The short answer to all of the contentions raised by appellant is that any challenge to the consent by the parties, the effectiveness of the waiver of procedural due process, or the voluntariness of the Settlement Agreement are matters that should have been addressed at a point in time before he accepted the benefits of the Agreement, preferably during the course of the negotiations.

In *Franzen v. Dubinok*, 290 Md. 65, 68–69, 427 A.2d 1002 (1981), the Court of Appeals, speaking to the legal effect of a voluntary act inconsistent with a claim of error, explained:

The law of this State is clear that the "right to an appeal may be lost by acquiescence in, or recognition of, the validity of the decision below from which the appeal is taken or by otherwise taking a position which is inconsistent with the right of appeal." In conformity to this principle, we have heretofore held that the filing of a *remittitur* by the beneficiary, combined with the acceptance of the tendered payment of the award and causing the court record to be marked as satisfied, brings the litigation to a complete conclusion, thus barring an appeal by the judgment creditor; *that no appeal lies from a consent decree; and that after an invocation of the benefits accruing under an order of court, a party will not be heard to assail its validity.* This

general rule of preclusion enunciated in the [*Rocks v.*] *Brosius* [241 Md. 612, 217 A.2d 531 (1966) ] case has been variously characterized as an "estoppel," a "waiver" of the right to appeal; an "acceptance of benefits" of the court determination, creating "mootness," and an "acquiescence" in the judgment. We think the label applied to the rule is less important than its essence—that a voluntary act of a party which is inconsistent with the assignment of errors on appeal normally precludes that party from obtaining appellate review.

(Emphasis added; citations and footnote omitted.)

It is well settled in Maryland, and the law generally is to the effect, that, if a party, knowing the facts, voluntarily accepts the benefits accruing to him under a judgment, order, or decree, such acceptance operates as a waiver of any errors in the judgment, order, or decree and estops that party from maintaining an appeal therefrom. *Silverberg v. Silverberg,* 148 Md. 682, 130 A. 325 (1925); *Stewart v. McCaddin,* 107 Md. 314, 68 A. 571 (1908). *See* 4 C.J.S. Appeal and Error § 215, p. 644. If, however, the portion of the decree adjudicates a separate and distinct claim that benefits the appellants, unrelated to, or independent of, the unfavorable portion of the decree, then the acceptance of the benefit under the unrelated or independent portion of the decree will not result in a waiver of the right to appeal from the other unfavorable independent portion of the decree. *See In re Silverman,* 305 N.Y. 13, 110 N.E.2d 402 (1953); *Mudd v. Perry,* 25 F.2d 85 (8th Cir.1928), *cert. denied,* 278 U.S. 601, 49 S.Ct. 9, 73 L.Ed. 529 (1928). *See* also 4 C.J.S. Appeal and Error § 215, p. 645.

More recently, we said in *Royal Insurance Company v. Austin,* 79 Md.App. 741, 743–44, 558 A.2d 1247 (1988):

It is a well-settled proposition in Maryland that consent decrees are not appealable. Perceiving no pertinent difference between consent decrees in equity and consent judgments at law, this [C]ourt has applied the same rule to the latter. The reasoning behind this jurisdictional bar is that an appeal from consensual rulings is patently inconsistent

with the [558 A.2d at 1249] intent of such voluntary rulings expeditiously to resolve legal disputes.

(Citations omitted.)

In our opinion, the consent judgments of December 22, 1998, constitute an adjudication of the entire dispute in regard to the rights to foreclose the mortgage under the facts established in the lower court and the various obligations and rights attendant upon that determination. The provisions of the one [decree] were dependent upon each other and no provision of the [decree] adjudicated any separate distinct or independent claim. The knowledgeable acceptance, therefore, of the benefit of any portion of the [decree] waived any alleged error in the entire [decree] and estopped the accepting party from challenging the [decree] on appeal. Accordingly, we shall grant appellee's motion to dismiss.

## LACK OF CONSENT

Appellant argues that the consent judgments were invalid and may not be executed by appellee, as successor in interest, because he only consented to having judgments entered against him by MDIF, and had withdrawn his consent prior to the entry of the judgments. Appellant also urges that, because he had notified the trial court of his opposition prior to the actual entry of the judgment, the court had no power to enter the consent judgment. We disagree.

In the case *sub judice*, appellant and MDIF intended for the Settlement Agreement to be binding and to terminate the pending litigation. We held, in *Chernick v. Chernick*, 327 Md. 470, 484, 610 A.2d 770 (1992), that, when the parties have agreed to the terms of the consent judgment and reduced it to writing, the court may sign the consent order. "The fact that one of the parties may have changed his or her mind shortly before or shortly after the submitted consent order was signed by the court does not invalidate the signed consent judgment." *Id.* Additionally, when a settlement provides for the entry of consent judgments, the parties' consent to contract is measured at the time of negotiation. *Id.* Moreover, "a litigant

'cannot knowing the facts, both voluntarily accept the benefits of a judgment or decree and then later be heard to question its validity on appeal.' " *See Osztreicher v. Juanteguy*, 338 Md. 528, 534, 659 A.2d 1278 (1995) (citations omitted). Therefore, appellee is entitled to enforce the consent judgments against appellant since he, in legal contemplation, consented to MDIF assigning its rights to another party. Because there was a binding contract, appellant may not withdraw his consent to entry of these judgments. Accordingly, because appellant consented to the consent judgments and accepted the benefits under the Settlement Agreement, he may not maintain this appeal.

## ASSIGNMENT

Without benefit of authority,[1] appellant next argues that a consent judgment can only be filed by the filing parties and cannot be assigned prior to filing. In response, appellee contends that there was no stipulation anywhere in the Settlement Agreement that would preclude the assignment of the consent judgments. Appellant's contention that the consent judgments were not assignable is belied by the language of the 1997 Settlement Agreement, in which all interests, rights, and conditions under the Agreement were transferred to appellee. Paragraphs 6(A) and (B) of the Agreement state:

> 6. (A) Subject to the provisions of section (B) of this paragraph six, and in consideration of the terms and provisions of this Settlement Agreement and General Release, MDIF, for itself and for its predecessors, predecessors in interest, successors, successors in interest, and assigns (hereinafter referred to as "Releaser" in this paragraph), does hereby irrevocably and unconditionally release, acquit ... [appellant], and his past, present, and future successors, trustees, assigns, agents, insurers, attorneys ... of and

---

1. Appellant acknowledges in his brief, "Candor requires an admission that counsel for [appellant] have been unable to locate any case specifically discussing whether or not an unfiled consent judgment, which was also unsupported by a binding contract to settle, could be assigned."

from all and every manner of action and actions, cause and causes of action, suits, proceedings, debts, . . . .

(B) If [appellant] defaults under this Agreement and MDIF files one or more of the consent judgments, MDIF may take any and all steps necessary to enforce and collect the judgments, including but not limited to the assertion of a claim or the filing of suit to set aside certain transfers of property. . . .

 In sum, the 1997 Settlement Agreement allowed MDIF to assign or sell its interest in the Agreement to another entity or individual. The plain language of the 1997 Settlement Agreement clearly established that appellee was to acquire all of the rights, conditions, and interests under the Agreement. The rights and interests, once transferred, may be enforced by appellee against appellant. Appellee may take steps necessary to enforce a consent judgment against appellant for default, pursuant to the payment arrangement expressed in the Agreement. Moreover, a contractual right can be assigned as long as the party's obligations are not materially changed or increased. 4 *Corbin on Contracts* § 868 *Restatement* (2nd 1981). In the instant case, the payment obligations that appellant had under the 1997 Settlement Agreement did not change when MDIF sold its rights under the Agreement to appellee. Neither the amount owed nor the date upon which payments were due changed. Since the assignment of interest was valid, appellant may not appeal the entry of the consent judgments.

## CONSENT JUDGMENTS/CONFESSED JUDGMENTS

 Appellant maintains that the consent judgments "should be treated as confessions of judgment" because they were not the simultaneous product of negotiations and, as employed here, are a unilateral enforcement mechanism and deny appellant the "opportunity to prove that there were substantial and real grounds for an actual controversy as to the merits of the defense." Appellant's assertion that the consent judgments are really confessed judgments, pursuant

to Maryland Rule 2–611 (1999), has no merit. The consent judgments, pursuant to Maryland Rule 2–612 (1999), stem from agreements negotiated between parties to settle their disputes. Rule 2–612 for consent judgments provides, in relevant part:

> A court may enter a judgment at any time by consent of the parties. The clerk may enter the judgment at any time by consent of the parties if the judgment: (a) is for a specified amount of money or for costs, or denies all relief; and (b) adjudicates all of the claims for relief presented in this action, whether by original claim, counter claim, cross claim, or third party claim.

In the instant case, the consent judgments were a result of a settlement that the parties reached, pursuant to a default by appellant on the 1985 Promissory Note. The third and fifth paragraphs of the 1997 Settlement Agreement address the execution of the consent judgments with the understanding that they were to serve as an enforcement mechanism and would not be filed in court absent default by appellant. Further, the plain language of the 1997 Settlement Agreement clearly states that these consent judgments were for a specified amount and had adjudicated all the prior claims against appellant addressed in the prior lawsuit. The 1997 Settlement Agreement does not mention confessed judgments. Appellant signed the Agreement voluntarily and in consultation with his counsel; therefore, he was aware of the consequences of consenting to the entry of "consent" judgments as opposed to "confessed" judgments. Consequently, the consent judgments set forth in the 1997 Settlement Agreement should be accorded the legal effect of consent judgments. If the parties had intended them to be confessed judgments, they would have specified that in the 1997 Settlement Agreement.

## PROCEDURAL DUE PROCESS

Appellant next contends that enforcement of consent judgments, pursuant to Maryland Rule 2–612, which does not provide for notice or an opportunity to be heard, violates due

process guarantees of both the United States and Maryland Constitutions. This claim of error is essentially a challenge, generally, to the constitutionality of Maryland Rule 2–612. No such claim was presented to the lower court.

Nonetheless, it is well settled that "due process rights to notice and hearing prior to a civil judgment are subject to waiver." *See D.H. Overmyer Co., Inc. v. Frick,* 405 U.S. 174, 185, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972). The standard for waiver is that it be made voluntarily, knowingly, and intelligently. *Id.* Clearly, appellant, in his execution of the 1997 Settlement Agreement containing the consent judgment provision, voluntarily, intelligently, and knowingly waived the rights he otherwise possessed to prejudgment notice and hearing with full awareness of the legal consequences, after the opportunity to consult with legal counsel. Further, appellant received a letter from appellee's counsel advising him of default and an opportunity to cure default before the consent judgments would be entered against him. A confessed judgment may be opened if the debtor poses a jury question, that is, if his [or her] evidence would have been sufficient to prevent a directed verdict against him [or her]. *Billingsley v. Lincoln National Bank,* 271 Md. 683, 689, 320 A.2d 34 (1974). The case, *sub judice,* by contrast, does not involve a confessed judgment and contemplates appellant's explicit consent to entry of judgment, thereby waiving any right to open the judgment or otherwise have it set aside.

## WAIVER

Appellant next argues that the consent judgments should not be entered against him because he did not voluntarily, intelligently, and knowingly waive his procedural due process rights by allowing consent judgments to be entered against him. Appellant asserts that the Settlement Agreement does not contain clear language indicating a knowing waiver of his rights and that it was involuntary because the Settlement Agreement between himself and MDIF was a contract of

adhesion with unequal bargaining power and not freely negotiated. We disagree.

It is well established that, when a party, aware of the facts, "voluntarily accepts . . . benefits accruing to him or her under a judgment, order, or decree, such acceptance operates as a waiver of any errors in the judgment order, or decree and estops that party from maintaining an appeal therefrom." *See Dietz v. Dietz,* 117 Md.App. 724, 730, 701 A.2d 1144 (1997) (citing *Dubin v. Mobile Land Corp.,* 250 Md. 349, 353, 243 A.2d 585 (1968)). This principle is known as the general waiver rule and has been extended beyond final judgments to include consent judgments or decrees. *See Mercantile Trust Co. v. Schloss,* 165 Md. 18, 166 A. 599 (1933).

 In the case at bar, appellant clearly forfeited his right to appellate review, because he voluntarily accepted all of the benefits accruing to him under the 1997 Settlement Agreement. Appellant elected to enter into the pre-trial settlement with MDIF for payment owed on the original Note executed in 1985. It is undisputed, pursuant to the new Agreement, that appellant agreed to make a series of monthly payments, without interest, beginning in March 1997 and ending in June 1999. Appellant also, with the advisement of legal counsel, signed and consented to seven judgments in the event of default on the new Settlement Agreement, and all the prior claims were dismissed. Clearly, the presence of his signature on the seven consent judgments authorized the court to enter them upon default. It is, therefore, clear that appellant knowingly and voluntarily waived the rights he otherwise possessed to prejudgment notice and hearing with the full awareness of the legal consequences. If there were a problem concerning unequal bargaining power, it should have been addressed at the time of negotiations with MDIF; otherwise, appellant waived all rights by accepting benefits of the Settlement Agreement, and is estopped from maintaining this appeal.

 We also reject appellant's contention that the 1997 Settlement Agreement was not supported by adequate consid-

eration. Pursuant to the Agreement, MDIF released appellant of all debts and judgments that were a part of the settlement of the original Note executed in 1985. Moreover, the fact that MDIF agreed to waive interest accrued, due, or owing illustrates that there is no issue involving the adequacy of consideration in the 1997 Settlement Agreement. The preamble to the Agreement stated that the parties "wish to settle the Lawsuit, and all other disputes, claims, causes of action, demands, suits, and matters that have arisen between them ... for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, [appellant] and MDIF hereby agree ..." Further, the Settlement Agreement in this case was signed by appellant, submitted to the circuit court, and approved. Because there existed valid consideration, coupled with a binding consensual contract to settle this case, the court may properly enter a consent judgment. Accordingly, no appeal will lie.

### RULE 1–324

Finally, appellant posits that the court abused its discretion in denying his motion to alter or amend judgment. Appellant contends that, since the Clerk of the Court did not send a copy of the order to appellant's attorney, the consent judgments against him should be vacated. He states that the Clerk violated Maryland Rule 1–324 (1999), which provides: "Upon entry on the docket of any order or ruling of the court not made in the course of a hearing or trial, the clerk shall send a copy of the order or ruling to all parties entitled to service under Rule 1–321...." Appellee responds, stating that appellant's contention should not be considered because it was not fairly presented to the lower court.

The mandatory notice provision provided for in Rule 1–324 was enacted to "prevent hardships which may result from a lack of notice and the corresponding lack of an opportunity to interpose defenses prior to enrollment of a judgment." *See Greer v. Inman,* 79 Md.App. 350, 354, 556 A.2d 1140 (1989) (quoting *Alban Tractor Co. v. Williford,* 61

Md.App. 71, 77, 484 A.2d 1039 (1984), *cert. denied*, 302 Md. 680, 490 A.2d 718 (1985)). Despite the Clerk's failure to give prompt notice, appellant failed to raise the violation of Rule 1–324 in the lower court; hence, his contention is not preserved for appellate review. Appellant failed to articulate that the Clerk violated Rule 1–324, or assert any rights allegedly arising from such a violation. Appellant cites violations of Rule 2–612 and Maryland Rule 2–534 (1999), but fails to mention Rule 1–324 in his original or supplemental motions to alter or amend consent judgments. The only argument appellant makes with regard to the Clerk is that, "[i]f counsel had not went [sic] to the Clerk of the Court and asked the Clerk to pull the docket, the [appellant] would have never known when the judgments had been entered, and lost his right to file his motion under MARYLAND RULE 2–534 . . . ." Because appellant failed to raise Rule 1–324 or the legal argument regarding its effect on him before the circuit court, he did not preserve it for appellate review. We, therefore, will not address the asserted violation of Rule 1–324.

## CONCLUSION

We reiterate that the short answer to all of the issues that appellant raises is that they are matters that should have been addressed during the negotiations that resulted in the Settlement Agreement and in no event should they have been raised later then the point in time when appellant began accepting the benefits of the consent judgment. Pursuant to Maryland Rule 2–612, not only does Maryland law permit resolution of legal claims by resort to consent judgments, the law favors such alternative means of resolving disputes. Complaining that "[t]his was far from 'a freely-negotiated, arms'-length bargain between two private parties of relatively equal contractual power,'" appellant urges that we "should also act to prevent the 'extortion of basic legal rights' by a state agency." Had not appellant been able to enter into negotiations with MDIF resulting in the Settlement Agreement that provided for payment of the balance due under Promissory Note for five hundred thousand dollars, MDIF would have proceeded to

judgment and immediate execution thereon. In other words, appellant was extended forbearance from immediate collection proceedings, along with the attendant liens and a potential deficiency decree resulting from a forced sale of assets, an arrangement for payment over a period of two years, and an agreement to forgo the collection of legal interest.

The logical extension of appellant's argument is that there could never be a legally cognizable agreement negotiated between a private citizen and the government. Indeed, imposition of the requirement that the parties be of relatively equal contractual power, in the abstract, would mean that no court could ever sanction an agreement between a taxpayer and the Internal Revenue Service. Although appellant couches his claims of error on this appeal in terms of the inappropriateness of the traditional judicial acquiescence toward consent judgments *"in this case,"* his assail is on consent judgments, generally, and specifically on all consent judgments between a governmental agency and a private citizen. The plain language of Maryland Rule 2–612 makes clear that, as long as the parties are prepared to enter into an agreement that will essentially dispose of the litigation, "a court may enter a judgment *at any time by consent of the parties."* None of the issues raised by appellant are properly before us because, knowing the facts, he voluntarily accepted the benefits accruing to him under the judgment and such acceptance operated as a waiver of any errors in the judgment and estops appellant from maintaining an appeal therefrom. *Silverberg,* 148 Md. at 689, 130 A. 325.

**APPEAL DISMISSED.**

**COSTS TO BE PAID BY APPELLANT.**