## MAURICE L. LONG *v.* RICHARD L. RUNYEON

[No. 121, September Term, 1978.]

*Decided July 19, 1979.*

The cause was submitted on brief to MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

Submitted by *James G. Kolb* for appellant.

No brief and no appearance for appellee.

SMITH, J., delivered the opinion of the Court.

We shall hold in this case that a District Court judge

improperly attempted to force a settlement. We recognize, however, that in *Chertkof v. Harry C. Weiskittel Co.,* 251 Md. 544, 550, 248 A. 2d 373 (1968), *cert. denied,* 394 U. S. 974 (1969), Chief Judge Hammond for the Court referred to the fact that courts look with favor upon the compromise or settlement of law suits in the interest of efficient and economical administration of justice and the lessening of friction and acrimony. He pointed out that often a trial judge can be the catalyst in producing such a settlement.

Appellee, Richard L. Runyeon, married the granddaughter of appellant, Maurice L. Long. They desired to purchase a home. Mr. Long loaned them the sum of $5,000 for use as a down payment, taking in return a note for that amount. It specified that it was to bear interest at 5% and should be payable in monthly installments of $100. This apparently was modified by agreement of the parties by adoption of an amortization schedule under which $94.36 per month would be paid, including principal and interest at 5%, for five years.

Mr. and Mrs. Runyeon separated. About a year after this money was borrowed they entered into an agreement relative to their property rights. Under it title to the land in question was transferred to Mr. Runyeon. He agreed to pay the monthly payments to Mr. Long until the indebtedness was liquidated. He continued such payments, however, for only about three months after the agreement was signed.

Mr. Long brought suit in the District Court of Maryland in Baltimore County for the sum due him. Mr. Runyeon appeared at trial. Several attempts at settlement were made at the instance of the court, including a conference between counsel, Mr. Runyeon, and the judge in chambers. After the last such conference, counsel for Mr. Runyeon was asked whether there was a defense. He said, "Defense rests." The judge then said:

> All right, the court is prepared to enter judgment for — in excess of $4,000. The court, however looks to Mr. Dugan's client [i.e. Mr. Runyeon] and acquaints him with the fact that under our law you could, within 30 days file an appeal, but that involves certain financial hardships in that a transcript of this

trial would have to be made. I assume Mr. Dugan is not in the habit of working for nothing, so financial hardships would come in from that aspect, and the case would have to be reviewed by the Circuit Court. I can not tell you what the Circuit Court would do with it. On the other hand, the Circuit Court is bound under our rules by findings of fact read into the record by the judge, and I am prepared to read into the record various findings of fact on this case. Now, based upon those findings, I have to, trained in law, feel that the court will probably sustain the judgment entered in this court and then you end up with a lot of expense and out of pocket a lot of money and still a judgment. Do you want — would you favor my giving you a five or ten minute opportunity to work something out with the other side? If so you'd better tell Mr. Dugan to ask me to hold off entering a ruling.

With that, counsel for Mr. Runyeon asked for an opportunity to confer with his client again. Further negotiations took place, after which counsel for Runyeon informed the court that the parties "were very close on the amount for settlement, but the plaintiff was demanding a lump sum payment, at the present time, [but his] client [was] only in a position to make an agreement for monthly payments on the amount." To this the judge retorted that the plaintiff was clearly wrong to demand a lump sum payment, because he should not be asking for any more than he would get by way of judgment and that would be a judgment upon which it would be necessary to execute, with no guaranty of a lump sum payment. He added, "And if that's what's holding you up I think you are wrong." Counsel for Long then suggested that there might be some middle ground.

After further negotiations the trial court gave Mr. Runyeon the choice of his entering up a consent judgment for $2,250 to be paid monthly or his entering a consent judgment for less if Mr. Runyeon "c[a]me up with no less than $300 cash within two weeks time." Counsel for Mr. Long does not

appear to have been involved, although he was present. Mr. Runyeon agreed, according to the trial judge, "To come up with $300 cash [to] be paid to [counsel for Mr. Long] within three weeks," after which the judge said he would hold the case sub curia and would enter a consent judgment in the amount of $1,825 "as soon as that $300 has been paid," the judgment to carry interest and to have provision for the payment of $12 court costs. Mr. Runyeon was asked if he would consent. He said he would, after which the record ultimately reflects:

THE COURT: If the $300 is paid the judgment will read $1,825 plus court costs of $12. If the $300 has not been paid, the judgment will be rather than consent, will be a judgment *nisi* for $4,250 plus the same $12 court costs, is that clear? Objection, if any, Mr. Kolb?

Counsel for Mr. Long indicated his consent. Mr. Runyeon was specifically asked by his attorney whether he agreed. He did.

The court proceedings took place on July 27, 1977. August 17 was three weeks from that date. It is undisputed that the $300 was not in the hands of Mr. Long's attorney by the end of business on that day, although other facts are not quite so clear. It seems that counsel for Runyeon called Long's attorney on August 17 informing him that he had the check in his possession. On August 19 Long's attorney addressed a letter to the trial judge saying that although he had received a call from Runyeon's attorney on August 17 the sum in question had not yet been paid. He said:

Since the payment of $300.00 was a condition precedent to the award of judgment in the total amount of $2,125.00, and since the non-payment will cause a judgment in the amount of $4,250.00 to be entered, I have drafted appropriate motion requesting judgment in the amount of $4,250.00 be entered in favor of the Plaintiff.

He appended a postscript in longhand in which he said that a telephone conversation that morning with counsel for Runyeon "revealed that check *ha[d] not yet been sent,* and

in view of [counsel's] filing this motion, w[*ould*] not be sent." (Emphasis in original.)

In the case jacket is a copy of a letter from Mr. Runyeon's attorney to Long's attorney dated August 19 enclosing the check. The copy is initialed by the trial judge with the date August 22 thereon. Counsel for Long in a letter to Runyeon's attorney dated August 25 said the letter to him of August 19 "was postmarked on Tuesday, August 23, 1977," and that the date on the check enclosed in it "ha[d] obviously been changed." He appended to the copy of the letter of August 25 which he sent the trial judge a copy of the envelope in question which clearly showed a postmark on the date of August 23 together with a copy of the check dated August 17, on which the number "seven" obviously had been changed, appearing originally to have been a "nine."

On October 4, 1977, the trial judge entered judgment in the amount of $1,825 and costs against Runyeon, noting "monies having been paid, even though approx 24 hours late, judgment for $4,250.00 shall not be allowed."

Long appealed to the Circuit Court for Baltimore County. That court affirmed, stating, "[I]t cannot be said that the Lower Court's findings on the evidence were clearly erroneous, pursuant to Maryland Rule 1386."

Maryland Rule 1386 is similar to Rules 886, applicable to this Court, and 1086, applicable to the Court of Special Appeals. It states:

> In the appeals to be decided on the record of the lower court, the appellate court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses.

*See Kowell Ford, Inc. v. Doolan,* 283 Md. 579, 391 A. 2d 840 (1978), and *Ryan v. Thurston,* 276 Md. 390, 347 A. 2d 834 (1975).

The law in this State is that no appeal will lie from a consent

judgment. *Mercantile Trust Co. v. Schloss,* 165 Md. 18, 24, 166 A. 599 (1933). We do not see this as an appeal from a consent judgment, however. Likewise, we do not view Rule 1386 as having anything to do with the matter. The appeal here was not from a determination on the facts of the case. It was a contention that the trial judge erred as a matter of law when, after attempting to settle the matter, he indicated that if Runyeon did certain things by a certain time a judgment by consent in a lesser amount than that claimed by the plaintiff would be entered, but if such were not done then a judgment in a larger amount would be entered. It was on the basis of this performance by the defendant Runyeon that Long agreed to a lower amount. Runyeon failed to perform. Long consented to a judgment based upon performance. The trial judge clearly indicated that the amount to which Long was entitled to judgment was "$4,250 plus ... $12 court costs." He should have entered judgment accordingly. *City of Baltimore v. Landay,* 258 Md. 568, 267 A. 2d 156 (1970), and *Chertkof v. Harry C. Weiskittel Co.,* 251 Md. 544, *supra,* are factually distinguishable.

> *Judgment reversed; judgment entered in favor of Maurice L. Long against Richard L. Runyeon in the amount of $4,250 with interest from October 4, 1977, and costs of suit including costs in District Court of Maryland, the Circuit Court for Baltimore County and this Court.*