935 A.2d 731

**Judith SUTER**

v.

**Darryl A. STUCKEY.**

**No. 9, Sept. Term, 2007.**

Court of Appeals of Maryland.

Nov. 14, 2007.

212

Judith A. Wolfer (Sheree L. Price and Deena Hausner of House of Ruth, Baltimore), on brief, for petitioner.

Gregory C. Powell, Riverdale, on brief, for respondent.

Argued Before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned) and DALE, R. CATHELL (Retired, specially assigned), JJ.

RAKER, J.

This case arises out of a final protective order issued by the District Court of Maryland, sitting in Prince George's County, at the request of Judith Suter, petitioner. We granted certiorari to consider the following question:

> "In a domestic violence protective order proceeding originating in the District Court, is a respondent estopped from appealing to the circuit court a protective order entered by consent?"

*Suter v. Stuckey*, 398 Md. 314, 920 A.2d 1058 (2007).

I.

Judith Suter filed a petition for a temporary protective order ("TPO") in the District Court of Maryland, sitting in Prince George's County, on April 13, 2006. In the petition for protection from domestic violence, Ms. Suter indicated that Darryl Stuckey, the respondent, punched her, slapped her, detained her against her will and "pointed his gun in [her] face and threaten[ed] to shoot" her. Petitioner described the triggering events as follows:

> "On April 5, 2006, Darryl Stuckey started an argument with me because I didn't take his phone calls. The argu-

ment lead into him slapping in my face, then punching me. He took me by my neck and threw me around the room. He then reached for his gun that was under the mattress and pointed it in my face, threatening to shoot me. He then hit me with the gun on the side of my head. I ran to call 911 from the cordless phone. He had removed all the cordless phones out of the house. I ran into his office to call 911 and we started fighting again. I punched him in his face and started throwing stuff at him to protect myself . . . I finally dialed 911. They picked up and asked me questions. He then started taking things out of the house. He took all my keys and my handbag out of the house. He took my laptop and hid that. The police came and asked both of us questions. My fiance and I and my daughter have been living together for over a year. We were planning on a wedding in St. Kitts on July 15, 2006. I was afraid of my life and my daughter's. The police arrested him because there was evidence of abuse on my face. They released him around 2:30 am that morning.

"On April 12, 2006, he came up to my place of employment and started an argument. He took my house keys and my car keys and told me not to come home. I am now homeless and carless. I took the gun out of the house on Monday and gave it to the police yesterday when I called them. . . . The gun had bullets in it. He stole my cell phone, my handbag, my camera, my coat and other work files. . . ."

Ms. Suter requested a wide spectrum of relief. In addition to asking for the court to order Stuckey to refrain from abusing, threatening, harassing, contacting or attempting to contact her, she asked that Stuckey be ordered to stay away from her residence, her daughter's school and her place of work. Ms. Suter asked also that Stuckey be ordered to attend counseling and to pay emergency family maintenance. Finally, Ms. Suter asked that she be awarded use and possession of the family car.

That same day, the Court issued the TPO, essentially granting the relief requested by Ms. Suter and scheduling a

final protective order hearing on April 20, 2006. Five days later, the court entered a final protective order by consent pursuant to Maryland Code (1984, 2006 Repl.Vol.), § 4–506(c) of the Family Law Article.[1]

On May 17, 2006, respondent Darryl Stuckey noted an appeal to the Circuit Court for Prince George's County. Respondent based his appeal partly on Maryland Code (1984, 2006 Repl.Vol.), § 4–507(b) of the Family Law Article,[2] which provides for a de novo appeal in the Circuit Court from a District Court grant or denial of relief based on a petition for a final protective order. Section 4–507(b) reads as follows:

"(1) If a District Court judge grants or denies relief under a petition filed under this subtitle, a respondent, any person eligible for relief, or a petitioner may appeal to the circuit court for the county where the District Court is located.

"(2) An appeal taken under this subsection to the circuit court shall be heard de novo in the circuit court...."

Stuckey also based his appeal on Maryland Rule 7–102(a) (2007), which governs appeals from the District Court to the Circuit Court.[3]

---

1. Maryland Code (1984, 2006 Repl.Vol.), § 4–506(c) of the Family Law Article reads, in pertinent part, as follows:

 "(1) If the respondent appears before the court at a protective order hearing or has been served with an interim or temporary protective order, or the court otherwise has personal jurisdiction over the respondent, the judge:
 "(i) may proceed with the final protective order hearing; and
 "(ii) if the judge finds by clear and convincing evidence that the alleged abuse has occurred, or if the respondent consents to the entry of a protective order, the judge may grant a final protective order to protect any person eligible for relief from abuse."

2. Unless otherwise noted, hereinafter references to § 4–507 will be to Maryland Code (1984, 2006 Repl.Vol.), § 4–507 of the Family Law Article.

3. Maryland Rule 7–102 (2007) reads as follows:

 "(a) **De Novo.** Except as provided in section (b) of this Rule, an appeal shall be tried de novo in all civil and criminal actions.
 "(b) **On the Record.** An appeal shall be heard on the record made in the District Court in the following cases:

In the Circuit Court, Ms. Suter filed a motion to dismiss the appeal, arguing the appeal was time-barred and Stuckey was estopped from appealing a consent judgment. Following a hearing, the Circuit Court granted the motion to dismiss and affirmed the Final Protective Order. Suter filed a motion for a new trial and/or motion to amend judgment on August 22, 2006, which was denied.

Stuckey requested an in banc review of the Circuit Court ruling, pursuant to M d. Rule 2–551.[4] Respondent again argued that § 4–507(b) and Md. Rule 7–102(a) entitled him to a de novo hearing in the Circuit Court. Ms. Suter argued that no appeal lies from a consent judgment.

---

"(1) a civil action in which the amount in controversy exceeds $5,000 exclusive of interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract;

"(2) any matter arising under § 4–401(7)(ii) of the Courts Article;

"(3) any civil or criminal action in which the parties so agree;

"(4) an appeal from an order or judgment of direct criminal contempt if the sentence imposed by the District Court was less than 90 days' imprisonment; and

"(5) an appeal by the State from a judgment quashing or dismissing a charging document or granting a motion to dismiss in a criminal case.

4. Maryland Rule 2–551 (2007), in relevant part, reads as follows:

"(a) **Generally.** When review by a court in banc is permitted by the Maryland Constitution, a party may have a judgment or determination of any point or question reviewed by a court in banc by filing a notice for in banc review. Issues are reserved for in banc review by making an objection in the manner set forth in Rules 2–517 and 2–520. Upon the filing of the notice, the Circuit Administrative Judge shall designate three judges of the circuit, other than the judge who tried the action, to sit in banc. . . .

"(g) **Dismissal.** The panel, on its own initiative or on motion of any party, shall dismiss an in banc review if (1) in banc review is not permitted by the Maryland Constitution, (2) the notice for in banc review was prematurely filed or not timely filed, or (3) the case has become moot, and the panel may dismiss if the memorandum of the party seeking review was not timely filed.

"(h) **Further Review.** Any party who seeks and obtains review under this Rule has no further right of appeal. The decision of the panel does not preclude an appeal to the Court of Special Appeals by an opposing party who is otherwise entitled to appeal."

The panel ruled that based on statutes governing appeals from the District Court to the Circuit Court in domestic violence protective order cases, Stuckey was entitled to a de novo appeal. In its written opinion and order, the panel first found the cases cited by Ms. Suter "not applicable" because those cases involved "[a]ppeals from the Circuit Court to the Court of Special Appeals" which are on the record appeals, not de novo appeals. The panel reasoned as follows:

> "The instant case is distinguishable in the respect that this is a domestic violence case in the District Court being appealed to the Circuit Court. Without the use of speculation or facts not in the record it is impossible to determine what benefit the party may have gained. There was no case law presented nor any discovered through the Court's research that *Fry [v. Coyote Portfolio,* 128 Md.App. 607, 739 A.2d 914 (1999) ] and its brethren could be applied to this matter."

The in banc panel found Maryland Code (1974, 2006 Repl. Vol.), § 12–401 of the Courts and Judicial Proceedings Article,[5] "controlling and dispositive." Section 12–401 states, in pertinent part, as follows:

> "(f) ... In a civil case in which the amount in controversy exceeds $5,000 exclusive of interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract, in any matter arising under § 4–401(7)(ii) of this article, and in any case in which the parties so agree, an appeal shall be heard on the record made in the District Court. In every other case, including a criminal case in which sentence has been imposed or suspended following a plea of nolo contendere or guilty, and an appeal in a municipal infraction or Code violation case, an appeal shall be tried de novo."

The in banc panel concluded that the case *sub judice* was an example of "every other case" that would be tried de novo under the section because appeals from a domestic violence

---

5. Unless otherwise noted, subsequent references herein to § 12–401 shall be to Maryland Code (1976, 2006 Repl.Vol.), § 12–401 of the Courts and Judicial Proceedings Article.

protective order are not noted in the companion exceptions. The panel concluded also that Md. Rule 7–102 and § 4–507 support the finding that Stuckey was entitled to a de novo appeal. The panel reversed the Circuit Court and remanded the case for a trial de novo.

This Court granted Ms. Suter's petition for writ of certiorari. *Suter v. Stuckey,* 398 Md. 314, 920 A.2d 1058 (2007).

## II.

We address first the threshold question of whether this case is moot. A case is moot when there is no longer an existing controversy when the case comes before the Court or when there is no longer an effective remedy the Court could grant. *Dept. of Human Resources, v. Roth,* 398 Md. 137, 143, 919 A.2d 1217, 1221 (2007); *Attorney Gen. v. A.A. County School Bus,* 286 Md. 324, 327, 407 A.2d 749, 752 (1979). The protective order at issue here expired under its own terms on April 18, 2007. Section 4–506(g)(1) of the Family Law Article, Maryland Code (1984, 2006 Repl.Vol.), provides that "all relief granted in a final protective order shall be effective for the period stated in the order, not to exceed 12 months." [6] Section 4–507 allows an extension or modification of the protective order only "during the term of the protective order." Now that the order has expired, the Court may not modify it. Even were we to agree with respondent, there is no possible relief that could be granted. This appeal is therefore moot.

Ordinarily, our inquiry would end here. *Roth,* 398 Md. at 143, 919 A.2d at 1221 (2007); *see also State v. Peterson,* 315

---

**6.** Final protective orders must expire, absent modification by the circuit court, within twelve months of their entry. Section 4–506(g)of the Family Law Article, Maryland Code (1984, 2006 Repl.Vol.) reads as follows:

"(1) Except as provided in paragraph (2) of this subsection, all relief granted in a final protective order shall be effective for the period stated in the order, not to exceed 12 months.

"(2) A subsequent circuit court order pertaining to any of the provisions included in the final protective order shall supersede those provisions in the final protective order."

Md. 73, 82, 553 A.2d 672, 677 (1989); *Mercy Hosp. v. Jackson,* 306 Md. 556, 562, 510 A.2d 562, 565 (1986); *State v. Ficker,* 266 Md. 500, 506–07, 295 A.2d 231 (1972) ("Appellate courts do not sit to give opinions on abstract propositions or moot questions, and appeals which present nothing else for decision are dismissed as a matter of course."). Under certain circumstances, however, this Court has found it appropriate to address the merits of a moot case. *Roth,* 398 Md. at 143, 919 A.2d at 1221. If a case implicates a matter of important public policy and is likely to recur but evade review, this court may consider the merits of a moot case. *Coburn v. Coburn,* 342 Md. 244, 250, 674 A.2d 951, 954 (1996) ("This Court in rare instances, however, may address the merits of a moot case if we are convinced that the case presents unresolved issues in matters of important public concern that, if decided, will establish a rule for future conduct."); *Lloyd v. Supervisors of Elections,* 206 Md. 36, 43, 111 A.2d 379, 382 (1954) ("[I]f the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight."). *See also S. Pac. Terminal Co. v. Interstate Commerce Comm'n,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

■ Ms. Suter urges this Court to consider the merits of this case, despite its having now become moot, because an important public policy is implicated and the very limited nature of protective orders means that this problem will continue to evade review. We agree that this case is one of those rare cases that presents an unresolved issue of important public concern. Accordingly, we exercise our discretion to address this issue because it implicates an important public

policy, it is likely to recur, and on recurrence it will evade review.

We have recognized protection from domestic violence as a significant important public policy concern to trigger review of moot cases. *See, e.g., Katsenelenbogen v. Katsenelenbogen,* 365 Md. 122, 125, 775 A.2d 1249, 1251 (2001); *Coburn,* 342 Md. at 250, 674 A.2d at 954. There were 23,813 domestic violence cases filed in Maryland District Court in fiscal year 2006. MARYLAND JUDICIARY, ANNUAL STATISTICAL ABSTRACT: FISCAL YEAR 2006, *Table DC–8.13, District Court: Domestic Violence Cases Filed and Terminated, 5 Year Comparative Data: Fiscal Years 2002–2006* 411 (2006), *available at* http://www. courts.state.md.us/publications/annualreport/reports/2006/ 2006_annual_report.pdf. A large number of these end in consent judgments. In addition to being prevalent, such judgments will evade review because they expire under their own terms within, at most, a year. For these reasons we will consider the merits of the matter before us.

### III.

Ms. Suter argues that appeals from domestic violence protective orders entered by consent in the District Court should be governed by this Court's long-standing jurisprudence providing that no appeal shall lie from a consent order. Ms. Suter argues that to allow a de novo appeal from a consent order in the domestic violence context would be contrary to the intent of Maryland's Protection from Domestic Violence Act.[7] Ms. Suter cites to both the protective purpose of the Act and the Legislature's grant of concurrent jurisdiction and full equitable powers to the District Court as evidence that the Legislature intended that protective orders entered by consent in the District Court should be treated with the same finality as the same orders entered by consent in the Circuit Court. Ms. Suter notes also that permitting a de novo appeal

---

**7.** The 1980 Protection from Domestic Violence Act, 1980 Md. Laws, Chap. 887, is now codified at Maryland Code (1984, 2006 Rep. Vol.), §§ 4–501 *et seq.* of the Family Law Article.

would disturb the bargain struck between the parties because one of the benefits bargained for was the cessation of litigation. Ms. Suter then posits that disrupting freely made bargains would be contrary to the protective function the Legislature intended to serve in passing the Protection from Domestic Violence Act.

Stuckey presents three bases for his position. First, he argues that he is entitled to appeal to the Circuit Court pursuant to § 4–507(b)(1). That section provides, in pertinent part, as follows:

"If a District Court judge grants or denies relief under a petition filed under this subtitle, a respondent, any person eligible for relief, or a petitioner may appeal to the circuit court for the county where the District Court is located."

Section 4–507(b)(2) provides that an appeal taken under § 4–507(b)(1) to the Circuit Court shall be heard de novo. Second, he relies also upon § 12–401. Finally, he relies upon Rule 7–102(a), which provides that "except as provided in Section (b) of this Rule, an appeal shall be tried de novo in all civil and criminal cases."

Stuckey maintains that the Legislature provided that *any* appeal from the District Court to the Circuit Court is to be de novo, and it is irrelevant whether the order entered in the District Court was by consent. He argues that the plain language of the statute should control, and that if appeals from consent judgments are to be excluded, the Legislature should amend the statute to preclude them explicitly.

## IV.

 It is a well-settled principle of the common law that no appeal lies from a consent decree.[8] This Court first recognized the principle in 1848 in the case of *Williams v.*

---

8. For the purposes of this analysis, the terms "judgment," "order" and "decree" are functionally interchangeable. *See* Black's Law Dictionary 858 (8th Ed.2004) ("The term *judgment* includes an equitable decree and any order from which an appeal lies" (citation omitted)); *Id.* at 441 (*"consent decree.* ... also termed *consent order."*)

*Williams* when it stated "where a decree is made by consent of counsel, there lies no appeal or rehearing." [9] *Williams v. Williams*, 7 Gill. 302, 305, 32 Md. 231, 234 (1848) (*quoting Bradish v. Gee*, 27 Eng. Rep. 152, Ambl. 229 (1754)). The rule was the same in the chancery courts of England, where the issue of consent decrees arose. *See, e.g., Wood v. Griffith*, 35 Eng. Rep. 590, 1 Mer. 35 (1815); *Bradish v. Gee*, 27 Eng. Rep. 152; *Downing v. Cage*, 21 Eng. Rep 961, 1 Eq. Ca. Abr. 165 (1699); and DANIELL'S CHANCERY PRACTICE 1110–11 (8th British ed., 1901). We have had many opportunities to reaffirm the basic principle that a judgment, if it was consented to, cannot be appealed. *See Bryant v. Social Services*, 387 Md. 30, 42, 874 A.2d 457, 463 (2005); *Long v. State*, 371 Md. 72, 86, 807 A.2d 1, 9 (2002); *Dietz v. Dietz*, 351 Md. 683, 690, 720 A.2d 298, 302 (1998); *Osztreicher v. Juanteguy*, 338 Md. 528, 534, 659 A.2d 1278, 1281 (1995); *Chernick v. Chernick*, 327 Md. 470, 481, 610 A.2d 770, 775 (1992); *Globe American v. Chung*, 322 Md. 713, 716–17, 589 A.2d 956, 957 (1991); *Banegura v. Taylor*, 312 Md. 609, 615, 541 A.2d 969, 972 (1988); *WSSC v. Riverdale Fire Co.*, 308 Md. 556, 560, 520 A.2d 1319, 1321

---

**9.** Apparently, the first recognition of this principle in Maryland occurred in the High Court of Chancery in 1824 in *Ringgold's Case*, 1 Bl. 5, 9, 12 (Md. Ch. 1824) (summarizing English treatment of the subject: "at common law, no writ of error will lie from a judgment by default or by consent; so in equity the decree or order appealed from must have been adverse, and not made by the express or tacit consent of the appellant: as when a party thinks proper not merely to decline opposition to measures which the Court would enforce, but, by himself or his counsel, consents to a decree or order, there lies no appeal from it, even though he gave no such authority to his solicitor; his remedy being against his counsel; nor can any appeal be made generally available from a decree by default, or, as it would seem, from a decree taking the bill *pro confesso*." (citations omitted)). In 1848 the High Court of Chancery, while considering an appeal from a consent decree allowing the sale for forfeiture of a mortgage, found that if a judgment "settled the questions of right between the parties" the appeal should be entertained, "no matter whether the decision was adverse, or by consent or default." *Chesapeake Bank v. McClellan*, 1 Md. Ch. 254, 255 (Md. Ch. 1848). This Court disapproved *Chesapeake Bank v. McClellan* in *Emersonian Apartments v. Taylor*, saying the rule in *Chesapeake* "is not the law as announced by this court in case of consent in equity cases." *Emersonian Apartments v. Taylor*, 132 Md. 209, 214, 103 A. 423, 424 (1918).

(1987); *Franzen v. Dubinok,* 290 Md. 65, 68, 427 A.2d 1002, 1004 (1981); *Long v. Runyeon,* 285 Md. 425, 429–430, 403 A.2d 785, 788 (1979); *Suburban Dev. Corp. v. Perryman,* 281 Md. 168, 171, 377 A.2d 1164, 1165 (1977); *Lohss and Sprenkle v. State,* 272 Md. 113, 118–19, 321 A.2d 534, 538 (1974); *First Federated Com. v. Comm'r,* 272 Md. 329, 332, 322 A.2d 539, 542 (1974); *Rocks v. Brosius,* 241 Md. 612, 630, 217 A.2d 531, 541 (1966); *Mercantile Trust Co. v. Schloss,* 165 Md. 18, 24, 166 A. 599, 601 (1933); *Emersonian Apartments v. Taylor,* 132 Md. 209, 214, 103 A. 423, 424 (1918); *Gable v. Williams,* 59 Md. 46, 1882 WL 4508, \*2 (1882); *Williams v. Williams,* 7 Gill. 302.[10]

■■ The rule that there is no right to appeal from a consent decree is a subset of the broader principles underlying the right to appeal. The availability of appeal is limited to parties who are aggrieved by the final judgment. *Thompson v. State,* 395 Md. 240, 248–9, 909 A.2d 1035, 1041 (2006) (citing *Adm'r, Motor Vehicle Adm. v. Vogt,* 267 Md. 660, 664, 299 A.2d 1, 3 (1973)). A party cannot be aggrieved by a judgment to which he or she acquiesced. *See Dietz,* 351 Md. at 689–90, 720 A.2d at 301–02. The "right to appeal may be lost by acquiescence in, or recognition of, the validity of the decision below from which the appeal is taken or by otherwise taking a position which is inconsistent with the right of appeal." *Rocks v. Brosius,* 241 Md. at 630, 217 A.2d at 541. The rationale for this general rule "has been variously characterized as an 'estoppel', a 'waiver' of the right to appeal, an 'acceptance of benefits' of the court determination creating 'mootness', and an 'acquiescence' in the judgment." *Franzen v. Dubinok,* 290 Md. at 68, 427 A.2d at 1004 (1981).

---

**10.** The rule is otherwise if there was no actual consent. If there was no actual consent because the judgment was coerced, exceeded the scope of consent, or was not within the jurisdiction of the court, or for any other reason consent was not effective, an appeal will be entertained. *See, e.g., Bryant v. Howard County Dept. of Social Services ex rel. Costley,* 387 Md. 30, 41–42, 874 A.2d 457, 463 (2005); *Chernick v. Chernick,* 327 Md. 470, 477, 610 A.2d 770, 773 (1992); *Long v. Runyeon,* 285 Md. 425, 429–30, 403 A.2d 785, 788 (1979); *Mercantile Trust Co. v. Schloss,* 165 Md. 18, 24–25, 166 A. 599, 601–02 (1933).

The nature of a consent judgment precludes appeal. Consent judgments "are essentially agreements entered into by the parties which must be endorsed by the court. They have attributes of both contracts and judicial decrees." *Chernick v. Chernick*, 327 Md. at 478, 610 A.2d at 774 (1992) (citing *Local Number 93 v. City of Cleveland*, 478 U.S. 501, 519, 106 S.Ct. 3063, 3073, 92 L.Ed.2d 405 (1986)). Like contracts, the parties bargain and provide consideration. Consideration is not always tangible. In the case of a consent judgment, the fact that "the parties give up any meritorious claims or defenses they may have had in order to avoid further litigation" may serve as consideration. *Long v. State*, 371 Md. 72, 86, 807 A.2d 1, 9 (2002).

In *Chernick*, this Court addressed the impact of one of the parties' change of mind on a consent order which had been signed and filed with the court. *Chernick*, 327 Md. at 484, 610 A.2d at 777. We held that where the underlying bargaining was not unconscionable nor the product of duress, "[t]he fact that one of the parties may have changed his or her mind shortly before or after the submitted consent order was signed by the court does not invalidate the signed consent judgment." *Id.* The contractual nature of the consent decree meant that when there was uncoerced "bargaining for the reciprocal promises made to one another" the end product should not be disturbed. *Id.* at 480, 610 A.2d at 774.

The public policy of promoting settlement agreements by ensuring finality is another reason to disallow appeals from consent judgments. The Court in *Chernick* pointed to the desirability of settlement agreements that are binding and enforceable. *Id.* at 481, 610 A.2d at 775 (citing *McClellan v. Kennedy*, 8 Md. 230 (1855)). In *Long v. State*, the Court explained that "treating settlement agreements in civil cases contemplating a consent judgment, including their interpretation, as any other binding contract 'is consistent with the public policy dictating that courts should look with favor upon the compromise or settlement of law suits in the interest of efficiency and economical administration of justice and the lessening of friction and acrimony.'" *Long v. State*, 371 Md.

at 84–85, 807 A.2d at 8 (quoting *Clark v. Elza*, 286 Md. 208, 219, 406 A.2d 922, 928 (1979)). Although the issue in this case is moot, as future guidance to the lower courts we turn to the question of whether a party may appeal the entry of a consent protective order in the District Court.

## V.

The weight placed on the language of § 4–507 and § 12–401(d) by Stuckey and the panel merits a close examination of those statutes.[11] Accordingly, we review the historical context in which each statute arose.

We turn first to § 4–507. Section 4–507 is part of a broader statutory scheme enacted in 1980 as the Domestic Violence Protection Act. *See* Md.Code (1984, 2006 Repl.Vol.), §§ 4–501 through 4–516 of the Family Law Article.[12] In 1992, the Legislature substantively amended the provisions of the Act, extending the period of available relief, expanding the definition of those eligible for relief, granting courts the ability to modify a protective order and establishing penalties for violations of the order. 1992 Md. Laws, Chap. 65. Section 4–507, in pertinent part, read as follows:

"(b)(1) If the District Court grants or denies relief under a petition filed under this subtitle, a respondent, any person eligible for relief, or a petitioner may appeal to or file a petition for modification in the circuit court of the county where the district court is located.

---

11. We need not consider Md. Rule 7–102 in determining whether there is a right to appeal from a domestic violence protective order entered by consent. We have previously made clear that the Maryland Rules do not grant a right to appeal. *Dvorak v. Anne Arundel County Ethics Com'n*, 400 Md. 446, 452 n. 10, 929 A.2d 185, 189 n. 10 (2007); *Urbana Civic v. Urbana Mobile*, 260 Md. 458, 462–463, 272 A.2d 628, 631 (1971).

12. The Domestic Violence Protection Act was enacted originally by Chapter 887 of the Acts of 1980 and was codified originally as §§ 4–501–4–506 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1980 Cum.Supp.). In 1984, the statute was repealed and reenacted by Chapter 296, § 1 of the Acts of 1984 and recodified in the Family Law Article of the Maryland Code (1984) at §§ 4–501 through 4–516.

"(2) An appeal or petition for modification taken under this subsection to the circuit court shall be heard de novo in the circuit court." [13]

Md.Code (1984, 1992 Cum.Supp.), § 4–507 of the Family Law Article. Section 4–506(c)(2), which was added also by this enactment, read as follows:

"If the court finds by clear and convincing evidence that the alleged abuse has occurred, or if the respondent consents to the entry of a protective order, the court may grant a protective order to protect any person eligible for relief from abuse."

Md.Code (1984, 1992 Cum.Supp.), § 4–506(c)(2) of the Family Law Article.

The language in 4–506(c) allowing a judge to enter a final protective order "if the respondent consents to the entry of a protective order" was added by an amendment from the Judicial Proceedings Committee at the first reading of S.B. 282, enacted as Chapter 282 of the Acts of 1992. DEPARTMENT OF LEGISLATIVE REFERENCE, JUDICIAL PROCEEDINGS COMMITTEE, AMENDMENT TO SENATE BILL 282, SB0282/197662/1 (1992). The provision for a de novo appeal to the circuit court contained in § 4–507 originated by amendment from the House Judiciary Committee and was recommended for adoption by the Conference Committee at the third reading. DEPARTMENT OF LEGISLATIVE SERVICES, CONFERENCE COMMITTEE REPORT, SB0282/217669/1 (1992).

---

**13.** Further amendments to § 4–507 did not produce changes relevant to this discussion. In 1994 the provision previously contained in § 4–507(b) that allowed the circuit court to modify protective orders was repealed and provision was made to allow the judgment of the District Court to remain in effect while appeals were taken. 1994 Md. Laws, Chap. 469. In 1997, § 4–507(a) was amended to establish that subsequent circuit court orders superseded provisions of the protective order and to allow for an extension of time for the final protective order. 1997 Md. Laws, Chap. 307. The 2002 amendments to § 4–507 brought the language into alignment with the Constitutional amendment expanding the authority of District Court commissioners to issue interim domestic violence protective orders. 2002 Md. Laws, Chap. 235.

The 1992 amendments were a major legislative undertaking to strengthen the domestic violence law of Maryland. *See Triggs v. State,* 382 Md. 27, 45–46, 852 A.2d 114, 125–26 (2004). One of the concerns surrounding the adoption of the bill was the burden it would create on the District Court system. *See* DEPARTMENT OF FISCAL SERVICES, FISCAL NOTE: REVISED TO S.B. 282 (1992). A manifestation of this concern was that a provision creating access to relief under the subtitle on a "24 hour basis" was removed by amendment before the bill was passed. *See* 1992 Md. Laws, Chap. 65. Proponents argued that "while this new relief will impose some additional burden on the District Court, our overriding concern should be on the burden imposed on the abused mother and children." ATTORNEY GENERAL JOSEPH CURRAN JR., LETTER TO THE HONORABLE WALTER M. BAKER, CHAIRMAN OF THE JUDICIAL PROCEEDINGS COMMITTEE, February 11, 1992 (hereinafter Curran letter). Curran informed the Judicial Proceedings Committee that settlement before hearing, which was common in the District of Columbia court proceeding upon which portions of the 1992 bill was modeled, "could dramatically reduce the number of cases the district court has to hear and, thus, mitigate the burden of dealing with" the more complex remedies afforded in the new bill. *Id.*

Proponents of the bill described the availability of emergency family maintenance in District Court as an essential innovation. *Id.* Previously, issues of child support would have to be litigated in the circuit court, with delays of up to four months. *Id.* Allowing emergency family maintenance in the District Court shifted the burden of circuit court litigation "to the abuser—if he is unhappy with the order, *he* files a case in circuit court and the support issue is examined *de novo.*" Curran Letter (emphasis in original). Allowing review in the circuit court was a way to ensure access for victims while preserving due process rights for respondents in protective order cases. *See* JUDITH A WOLFER, LEGAL DIRECTOR, HOUSE OF RUTH, TESTIMONY BEFORE THE SENATE JUDICIAL PROCEEDINGS COMMITTEE (S.B.282) (1992).

We look next to § 12–401. Section 12–401 is the general provision that governs appeals from final judgments of the District Court. The District Courts were created in 1970 by Constitutional amendment. The implementing legislation retained the right to trial de novo in civil cases where the amount in controversy was less than $1,000. 1970 Md. Laws, Chap. 528. As subsequently codified, the provision for appeals, in pertinent part, read as follows:

"(a) An appeal from a judgment of the District Court in a criminal, motor vehicle, or civil case shall be taken to the Circuit Court in the county in which the judgment was rendered. If the case was originally tried in Baltimore City, an appeal in a criminal or motor vehicle case shall be taken to the Criminal Court of Baltimore and in a civil case to the Baltimore City Court. In any case, except a civil case involving a claim of one thousand dollars ($1,000) or more, there should be an absolute right to a trial de novo...."

Md.Code (1957, 1970 Cum.Supp.), Art. 26 § 156.

During the 1971 legislative session the provision was amended as part of a larger revision of the duties and judicial compensation structure of the District Courts. 1971 Md. Laws, Chap. 423. Interestingly, the original bill, House Bill 512, was amended from a proposal to eliminate de novo appeal from the District Court to language that merely curtailed the scope of the de novo appeal granted in the 1970 law. The session law reads, in relevant part, as follows:

"~~In any case the court shall hear and decide the appeal on the record made in the District Court. There shall be no right to a trial de novo in the appellate court.~~ IN CIVIL CASES INVOLVING A CLAIM OF LESS THAN FIVE HUNDRED DOLLARS, IN CRIMINAL CASES, AND IN TRAFFIC CASES, THERE SHALL BE A TRIAL DE NOVO IN ALL APPEALS. HOWEVER, BY AGREEMENT OF THE PARTIES, THE APPEAL MAY BE HEARD AND DECIDED ON THE RECORD MADE IN THE DISTRICT COURT. IN ANY CIVIL CASE INVOLVING A CLAIM OF FIVE HUNDRED DOLLARS OR MORE THE APPEAL SHALL BE HEARD AND

DECIDED ON THE RECORD MADE IN THE DIS-
TRICT COURT." [14]

*Id.* In 1972, the statute was amended, again without substan-
tive change. *See* 1972 Md. Laws, Chap. 181, § 24. Section
12–401 was enacted in its current form in the 1973 codification
of the Courts and Judicial Proceedings Article. 1973 Md.
Laws Spec. Sess., Chap. 2. As subsequently codified, the
statute read, in pertinent part, as follows:

> "(c) *De novo and on record appeals.*—In a civil case in
> which the amount in controversy exceeds $500, and in any
> case in which the parties so agree, an appeal shall be heard
> on the record made in the District Court. In every other
> case, including a criminal case in which sentence has been
> imposed or suspended following a plea of nolo contendere or
> guilty, an appeal shall be tried de novo."

Md.Code (1974), § 12–401 of the Courts and Judicial Proceed-
ings Article. There have been many subsequent amendments
to § 12–401. None have wrought substantive change to the
provision providing for trial de novo,[15] which now reads, in
pertinent part, as follows:

> "(f) *De novo and on record appeals.*— . . . In every other
> case, including a criminal case in which sentence has been
> imposed or suspended following a plea of nolo contendere or
> guilty, and an appeal in a municipal infraction or Code
> violation case, an appeal shall be tried de novo."

*Id.*

## VI.

 We now turn to consider the application of §§ 4–507
and 12–401 to domestic violence protective orders entered by

---

**14.** In the 1970 Session Laws, strikeout indicated matters stricken from
the bill and all capitals indicated matters added by amendment. *See*
1970 Md. Laws, Chap. 1.

**15.** There have been only two changes in the language of the sentence in
§ 12–401 dealing with de novo trial. In 1978 an appeal in a municipal
infraction was added to those appeals tried de novo. 1978 Md. Laws,
Chap. 735. In 1982, an appeal from a code violation was added. 1982
Md. Laws, Chap. 844.

consent. When construing a statutory scheme, our primary purpose is to ascertain the intent of the Legislature. *Carroll v. Konits*, 400 Md. 167, 191, 929 A.2d 19, 34 (2007). To do so, we first examine the plain language of the statute. *Broadwater v. State*, 401 Md. 175, 201, 931 A.2d 1098, (2007). "The meaning of the plainest language is controlled by the context in which it appears." *Carroll*, 400 Md. at 193, 929 A.2d at 35 (citations omitted). The context of a statute is an important aid to our determination of legislative purpose. *Johnson v. Mayor and City Council of Baltimore City*, 387 Md. 1, 12, 874 A.2d 439, 446 (2005); *Kaczorowski v. Mayor and City Council of Baltimore*, 309 Md. 505, 514–15, 525 A.2d 628, 632 (1987). That context is informed by "a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal." *Kaczorowski*, 309 Md. at 515, 525 A.2d at 632.

 Here we must consider the effects of both § 4–507 and § 12–401. In the case where two statutes apply to the same situation, we first attempt to reconcile them, and then, if the statutes remain contradictory, the more specific statute controls. *Maryland–National Capital Park & Planning v. Anderson*, 395 Md. 172, 183, 909 A.2d 694, 700 (2006); *State v. Ghajari*, 346 Md. 101, 115–16, 695 A.2d 143, 149–50 (1997). Accordingly, we first examine the more specific statute, § 4–507, and look to reconcile our interpretation with § 12–401.

We have examined the broader context of § 4–507 and found the Domestic Violence Protective Act to be a remedial statute designed to protect victims of domestic violence. *Triggs v. State*, 382 Md. 27, 45, 852 A.2d 114, 125 (2004); *Katsenelenbogen v. Katsenelenbogen* 365 Md. 122, 133–34, 775 A.2d 1249, 1256 (2001); *Coburn v. Coburn* 342 Md. 244, 252, 674 A.2d 951, 955 (1996); *Barbee v. Barbee*, 311 Md. 620, 623, 537 A.2d 224, 225 (1988). If protective orders entered by consent were appealable, the incentive for domestic violence victims to enter into such agreements would be diminished.

The reduction or elimination of the option to enter protective orders by consent implicates another legislative goal. In the 1992 amendments, where the provisions at issue here emerged, the Legislature was concerned also with the costs of implementation. Protective orders entered by consent save administrative costs of trial. Allowing a de novo appeal from a consent order inevitably increases costs.

In construing a statute, it is a long-standing rule of statutory interpretation that the common law will not be repealed by implication. *Robinson v. State*, 353 Md. 683, 693, 728 A.2d 698, 702 (1999); *Lutz v. State* 167 Md. 12, 15, 172 A. 354, 355–356 (1934). A statute is "not presumed to repeal the common law further than is expressly declared, and that a statute, made in the affirmative without any negative expressed or implied, does not take away the common law." *Robinson*, 353 Md. at 693, 728 A.2d at 702 (quotations omitted). In *Lutz*, we said as follows:

"The rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language. In order to hold that a statute has abrogated common law rights existing at the date of its enactment, it must clearly appear that they are repugnant to the act, or the part thereof invoked, that their survival would in effect deprive it of its efficacy and render its provisions nugatory."

*Lutz*, 167 Md. at 15, 172 A. at 356 (quoting 25 R.C.L. 1054). If the common law and the statute are in conflict, however, "the common law yields to the statute to the extent of the inconsistency, and a statute which deals with an entire subject-matter is generally construed as abrogating the common law as to that subject." *Id.* (internal citations omitted).

Maryland common law is clear that, as a general rule, the only persons who may appeal a judgment are those aggrieved by that judgment. *Thompson*, 395 Md. at 248–49, 909 A.2d at 1041. The corollary that a judgment entered by consent may not be appealed is well supported in our jurisprudence. *Bryant*, 387 Md. at 42, 874 A.2d at 463. There is no express

declaration contained in the text of § 4–507 or anywhere in the legislative history that purports to abrogate or limit the common law rule that a party must be aggrieved in order to have the right to appeal. Section 4–507 makes no mention of orders entered by consent. The Legislature was silent on the matter and we will not read this statute as an abrogation of the common law rule that a party may not appeal from a consent judgment.

Indeed, § 4–507 does not conflict with the common law [16] because its provisions can be given full effect without derogation from the common law. If "a respondent, any person eligible for relief, or a petitioner" is construed as only referring to those respondents, persons eligible for relief and petitioners that are aggrieved by the judgment of the District Court the statute and the common law are both given full expression. This Court has said "[i]t needs no authorities to support the proposition that one cannot appeal from a decree wherein the relief he prays for has been granted." *Mugford v. Mayor and City Council of Baltimore,* 185 Md. 266, 269, 44 A.2d 745, 746 (1946). A construction allowing appeals only in the event that a party is aggrieved by the judgment of the District Court is consistent with common law and the intent of the Legislature in enacting § 4–507. *Accord Bd. of Supervisors v. Pinnell,* 292 Ky. 364, 166 S.W.2d 882 (1942) (although appeals from the quarterly court are usually considered de novo, they are final judgments and are thus subject to the rule that there is no appeal from a consent judgment); *Bigler v. Bigler,* 82 Colo. 463, 260 P. 1081 (1927) (although appeal from a will contest is tried de novo, absent statutory instruction to the contrary, the general principle that there is no right to

---

**16.** We have suggested in the past that "the structure of the appeals statutes, *i.e.,* conferring abroad, general grant of appeal subject to enumerated limitations, further suggests that they are meant to represent the entire subject matter of the law of appeals." *State v. Green,* 367 Md. 61, 78, 785 A.2d 1275, 1284 (2001). We continue to affirm this principle insofar as the appeals statutes do address that subject matter. No part of the appeals provisions contained in Maryland Code (1974, 2006 Repl.Vol.), §§ 12–101 to 12–502 of the Courts and Judicial Proceedings Article, address consent judgments in any way.

appeal from a consent judgment will apply). It is the one we adopt here.

Section 12–401 may be construed in harmony with § 4–507. The language at issue in § 12–401 is the result of amendments that softened the original grant of the right of de novo appeal from decisions of the District Court. The 1970 establishment of the District Courts granted "an absolute right to trial de novo." 1970 Md. Laws, Chap. 528. The next legislative session produced a change that represented an apparent compromise between an absolute right to a de novo appeal and its complete elimination, proposed in the original reading of House Bill 512. 1971 Md. Laws, Chap. 423. Instead of either extreme, the Legislature chose a compromise of enumerated instances of de novo appeals. *Id.* This sequence of legislative events suggests that when the Legislature means to grant the absolute right of appeal, it is capable of doing so. The Legislature instead chose to circumscribe the right of appeal de novo, and, although it has expanded it slightly since 1972, it has never chosen to return to the language granting the "absolute right."

Section 12–401(f) determines the mode of appeal from a District Court judgment and does not grant or constrain the right of appeal. The grant of a right to appeal in domestic violence protective orders is governed squarely by § 4–507. In *Harper v. State,* 312 Md. 396, 540 A.2d 124 (1988), this Court considered the mode of appeal appropriate for contempt cases heard in the District Court. The State argued that subsections 12–401(d) and (e) of the Courts and Judicial Proceedings Article, Md.Code (1974, 1984 Repl.Vol., 1987 Cum.Supp.), which are equivalent to subsections 12–401(f) and (g) today, did not apply to contempt cases. *Id.* at 401, 540 A.2d at 126. The State reasoned that because the right to appeal from a contempt case was granted by § 12–402 of the 1987 Code, not § 12–401(a), subsections 12–401(d) and (e) did not apply. *Id.* The Court assumed arguendo that § 12–402 granted the right to appeal and held that §§ 12–401(d) and (e) governed *all* determinations of whether an appeal from the

District Court was on the record or de novo. *Id.* at 404, 540 A.2d at 128.

The fact that § 12–402 was "silent concerning the characteristics of th[e] appeal" and that no other statute addressed the mode of appeal was integral to the Court's decision to look to § 12–401. *Id.* In considering appeals from domestic violence protective order, the right to appeal *and* the mode of appeal are delineated in § 4–507. It is therefore unnecessary, in the absence of any express grant of an absolute right to de novo trial in § 12–401, for this Court to consider the applicability of § 12–401(f) any further.

In the case *sub judice,* the reviewing court need not look beyond the Order to see that it was entered by consent and note that respondent has not challenged the validity of that consent nor the jurisdiction of the District Court in entering the Order. The mere entry of a consent order is evidence of the benefits accruing to respondent under a judgment. A consent order ensures that the two parties will not be subject to the further time and expense of litigation, a tangible benefit. *See Long,* 371 Md. at 86, 807 A.2d at 9. Like any contract, respondent's and petitioner's reciprocal promises act as consideration. *See Chernick,* 327 Md. at 480, 610 A.2d at 774. Stuckey was spared the uncertainty of further litigation.

Moreover, in this case there *was* evidence that Stuckey benefitted materially from the agreement to an order by consent. For instance, in the TPO the District Court awarded exclusive use and possession of the shared residence to Ms. Suter. The final protective Order omitted this provision, although the judge had the power to order that relief under Maryland Code (1984, 2006 Repl Vol.), § 4–506(d)(4) of the Family Law Article. The Court also did not order Stuckey to provide emergency family maintenance, § 4–5 06(d)(9), participate in counseling, § 4–506(d)(11) or any of the other relief available under § 4–506(d). Md.Code (1984, 2006 Repl.Vol.), § 4–506(d) of the Family Law Article. The entry of the consent judgment gave Stuckey the benefit of certainty that Ms. Suter would be granted no further relief. Stuckey bene-

fitted from the entry of the consent Order by getting what he bargained for—cessation of litigation under terms he agreed to.

Stuckey agreed to the entry of the Order by consent. After agreeing to the Order, Stuckey was no longer an aggrieved party. Instead, he received the result he wanted and intended at the time. Stuckey's consent is evidence that the Order was a disposition in his favor. Absent any allegation of irregularity in the entrance of the judgment, the right to appeal from the consent judgment simply did not exist under § 4–507.

*JUDGMENT OF THE CIRCUIT COURT VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE APPEAL AS MOOT. COSTS TO BE PAID BY THE RESPONDENT.*